THE KANSAS PACIFIC RAILWAY COMPANY v. JOSEPH PEAVEY.

1. STATUTORY LIABILITY, *No Waiver of.* A railroad company cannot contract in advance with its employés for the waiver and release of the statutory liability imposed upon every railroad company organized or doing business in this state by ch. 93, Laws of 1874, and a contract in contravention of this statute is void, and no defense to an action brought by an employé of a railroad company for damages done to him in consequence of the negligence or mismanagement of a co-employé.

K. P. Rly. Co. v. Peavey.

2. OPINION; *Rule.* Opinion is inadmissible on questions which can be decided by the jury on the facts.

3. INSTRUCTIONS — *Conformity to Facts in Evidence.* Instructions should as far as possible conform to the actual facts in proof, and where there is no evidence in an action for damages resulting from the alleged negligence of the defendant, tending to show that the injuries were caused by such gross negligence on the part of the defendant or his servants as to imply wanton or willful injury, an instruction that if the jury believe from the evidence the accident in question was attributable to the want of ordinary care on the part of the plaintiff, he cannot recover, unless the jury further believe from the evidence, that the defendant was guilty of such gross negligence as implies willful injury, is erroneous and misleading.

4. COMPARATIVE NEGLIGENCE, *Rule of, not Adopted.* Where two parties, each of whom is under duty to exercise ordinary care, are guilty of negligence contributing to the injury of one of them, the injured party cannot recover damages therefor from the other on the sole ground that his negligence was less than that of the other.

5. PERSONAL INJURY OF RAILWAY EMPLOYÉ; *Action not Sustained.* In an action against a railway company for personal injuries, brought by an employé of the company, in a case where the company is liable only for ordinary negligence, and not for slight negligence, if the plaintiff himself is guilty of ordinary negligence contributing to the injury, he cannot recover, if the negligence of the railway company or a fellow-employé is merely greater than his, for in this class of cases the plaintiff must have exercised ordinary care, and not have been guilty of ordinary negligence, to sustain his action.

6. EXCESSIVE DAMAGES; *Verdict Set Aside.* In an action brought by a brakeman for personal injuries received in attempting to couple two cars together, where the sole permanent disability is the loss of the thumb and first finger of the right hand, and where the party from such injury was laid up a little over a month and could not do anything for three or four months, a verdict of $6,500 is so excessive as to show that it was given under the influence of passion or prejudice, and ought to be submitted to the judgment of another jury.

*Error from Wyandotte District Court.*

ACTION to recover for personal injury sustained by *Peavey,* while in the employment of *The Kansas Pacific Railway Company.* The petition was filed on the 17th day of January, 1881, and is as follows, (omitting court and title:)

"The said Joseph Peavey, the plaintiff in the above-entitled action, complains of the said Kansas Pacific railway company,

the defendant herein, for that said defendant is, and was at the several times in this petition mentioned, a railroad company and a railroad corporation, existing, organized and doing business in the state of Kansas.

"And said plaintiff further avers, that heretofore, to wit, on the 23d day of August, 1879, he was an employé of said defendant, and was at the request of said defendant, as such employé, engaged in acting as a brakeman and yardman, among other things, in and about the matter of yard switching and brakeman, at Armstrong, in said county and state, in which matter of said employment, said plaintiff, as such employé, yardman and brakeman, at the request of said defendant, then and there attempted to couple and fasten two cars together, and while so doing, said defendant and one John Ellis, then one of the engineers of said defendant, as such engineer, with great, unnecessary, improper, careless, negligent, and reckless speed and force, shoved and pushed a car against said plaintiff, and struck said plaintiff therewith, and caught said plaintiff and one of his hands between two cars, carelessly, recklessly and negligently, and thereby cut and bruised, wounded and mangled said plaintiff, and made said plaintiff sick, sore, lame and maimed for life, and rendered it necessary to amputate part of one of plaintiff's hands to save his life, and thereby and otherwise greatly damaged said plaintiff, and caused him to suffer great agony of mind and body, and make it necessary and proper for said plaintiff to employ and obtain surgical and nurse aid at great expense, to wit, one thousand dollars; and said plaintiff so employed said aid, at such expense.

"And said plaintiff further avers, that said Ellis was incompetent and unfit to perform the duties of such engineer, and was careless, negligent, and recklesss, of which said defendant then and before then knew and had notice; and said defendant employed said Ellis to act as such engineer, and put and placed him in control and power so to do, without reasonable inquiry, either as to the fitness or competency of said Ellis to be or to act as such engineer, or to have control or power as such, and without having exercised reasonable diligence or care to know or ascertain the fitness of said Ellis to act as such engineer, and without reasonable grounds to believe said Ellis was competent for such service. Notwithstanding which, said defendant continued said Ellis in such employment as such engineer, with control and power as such, until after the happening of said wrongs and grievances, after

said defendant, before the happening of said wrongs and grievances, knew and had notice that said Ellis was, as aforesaid, careless, reckless, negligent, incompetent and unfit to act as such engineer, or have power or control as such, and without using reasonable diligence or care to know, ascertain or be informed as to the fitness, care, knowledge or skill of said Ellis, or of the want thereof on his part, whereby, because and in consequence of the negligence and mismanagement of said defendant, its agents and engineers, said plaintiff was damaged in a large sum, to-wit, ten thousand dollars, without any want of care or skill on the part of said plaintiff.

"Wherefore, said plaintiff prays and demands judgment against said defendant for the sum of ten thousand dollars, and for costs of suit, &c.    THOMAS P. FENLON, and
BUCHAN & GIBSON,
*Att'ys for Pl'ff.*"

The railway company alleged, as a second defense, in its answer:

"That plaintiff, August 11, 1875, in writing agreed with defendant in consideration of his employment by the defendant at two dollars per day, to be paid him for the service being rendered by him at the time mentioned in his petition, to release defendant, and discharge and acquit the defendant from all liability and responsibility whatever on account of any and every personal injury which he might receive while engaged in the service of the defendant, and particularly the service mentioned in plaintiff's petition, whether the same was caused by carelessness, negligence, incompetency or unskillfulness of all or any of the other servants of defendant, and that he would, before exposing himself to danger in coupling cars, examine the condition and sufficiency thereof, and report the same to the company or his superior under whose supervision he might be employed, and that he would at all times rely upon his own judgment as to the condition and sufficiency of the cars, machinery, implements and tools used by defendant, and also upon the competency and skill of defendant's servants of all grades and classes, and that he would quit the employment of the defendant whenever he was unwilling to abide by the terms of said agreement. A copy of which agreement is herewith attached, and made a part of this answer:

[NOTE.—THIS CONTRACT MUST BE CAREFULLY READ BY EVERY EMPLOYÉ.]

Know all men by these presents, that whereas, I, Joseph Peavey, have engaged in the service of the Kansas Pacific railway company, as yard brakeman, at a salary of two dollars per day, and whereas, I well know the dangers incident to such employment, it is therefore agreed by and between myself and said company, the parties hereto, that in consideration of my said employment, and the compensation to be paid me for such service and the risks hereby assumed, I will, and by these presents I do hereby expressly and fully release, discharge, and acquit said company from all liability and responsibility whatsoever on account of any and every personal injury which I may receive while engaged in said service, whether said injury is caused or received by reason of any defect or insufficiency in the track of said company, or any part thereof; or by reason of any defect or insufficiency in any bridge of said company, or any part thereof; or by reason of any defect or insufficiency in any car used upon the road of said company, or any part of such car; or by reason of any defect or insufficiency in any hand-car, tool or other instrument furnished me by said company, or with which myself or any other employés or servants of said company may be engaged; or by reason of any careless, negligent, wrongful, or unskillful act or default on the part of any of the other agents, servants or employés of said company, either in running, conducting, managing, operating, moving or using any engine, tender, car, train of cars, hand-car, or other implement or tool in the service of said company. It being my intention to enter and remain in the employ of said company with the express understanding that I shall take upon myself all risks of personal injury from defective engines, tenders, road, road-bed, iron, ties, spikes, chairs, wheels, switches, bars, bridges, cars, couplings, brakes, machinery and tools of every kind and description in use upon said road, as well as all risks of personal injury from the carelessness, negligence, incompetency or unskillfulness of any and all other servants, agents, employés or officers of said company, whether they are or are not engaged in the same service, grade or department as myself. And I agree that before exposing myself to danger in coupling or uncoupling, handling, using or moving any engine or car, I will examine the condition and sufficiency thereof, and if found in any respect defective or insufficient, that I will report the same forthwith to the person under whose immediate supervision I am employed. And I hereby further agree to rely, at all times, upon my own judgment as to the condition and sufficiency of all the articles, machinery, implements and tools herein enumerated and used by said company, and also as to the competency and skillfulness of its servants in all grades and departments, and that I will quit the employment of said company whenever I am unwilling to abide by the terms of this agreement. And it is further agreed, that the terms of this agreement shall be binding upon me in whatever position I may occupy in the service of said company, and shall not be affected by any change in compensation.

In testimony whereof, we have hereunto set our hands and seals, this 11th day of August, 1875.      JOSEPH PEAVEY.

KANSAS PACIFIC RAILWAY COMPANY,

By O. H. Dorrance, Div. Sup't.

Witness: C. L. LESLIE."

Plaintiff below demurred to the second ground of defense, for the reasons:

"*First:* That the matters and things set forth in said

ground of defense do not state any defense to the cause of action set forth in the plaintiff's petition herein.

"*Second:* The alleged contract set forth in said ground of defense is contrary to law, against public policy, and void.

"*Third:* The parties plaintiff and defendant had no power to make said contract."

The demurrer was sustained by the court, the *Railway Company* excepting. Trial was had at the July Term of the court for 1882. No evidence was offered in support of the allegations in the petition that the engineer was incompetent, or that the company employed him without due caution. The jury returned a verdict for *Peavey,* and assessed his damages at $6,500. The court rendered judgment upon the verdict. The *Railway Company* excepted, and has brought the case here.

*J. P. Usher, A. L. Williams,* and *Chas. Monroe,* for plaintiff in error.

*Thomas P. Fenlon,* and *John B. Scroggs,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The petition alleges substantially that the defendant in error (plaintiff below) was employed as a brakeman and yardman by the railway company to work at Armstrong, in this state, and while engaged in attempting to couple two cars together, on the 23d day of August, 1879, was, without his fault, injured through the negligence of one of the engineers of defendant below, in carelessly and recklessly shoving and pushing a car against him, whereby one of his hands was caught between two cars, and greatly injured and mangled. Although the petition alleges that the engineer was incompetent, and that the company employed him without due caution, yet no evidence was offered in support of these latter allegations, and the case went to the jury solely upon the supposition that a liability had been incurred under the statute. (Laws 1874, ch. 93.) The railway company set up in its answer, among other defenses, a contract, containing

a waiver and release fully covering all liabilities imposed by the statute.    To this defense plaintiff filed his demurrer, alleging the contract was contrary to law, against public policy, and void.    This · demurrer was sustained by the court, and we are confronted at the threshold of the case with the question of the validity of this special contract.    Prior to the statute of 1874, the rule of the common law prevailed in this state, that a master was not liable to his servant for an injury happening in consequence of the negligence of a fellow-servant engaged in the same general employment, unless charged with some degree of fault or negligence in the selection or retention of the fellow-servant.    The legislature of the state has, however, changed the common-law rule, and the statute makes a railroad corporation liable for the negligence of one employé causing injury to a co-employé, without regard to the negligence of the company in selecting or retaining the employé. Whether this legislation be wise, or not, it is not within our province to determine.    We must assume that the legislature had satisfactory reasons for changing the rule of the common law, and having adopted the statute, as we may assume for wise and beneficial purposes, we do not think a railroad company can contract in advance for the release of the statute liability.    It is a familiar principle of law that a contract made in violation of the statute is void, and also that agreements contrary to the policy of statutes are equally void.    There are exceptions: thus, it is no part of the policy of the law to encourage frauds, by releasing the fraudulent party from the obligation of his contract, and so a party shall not set up his own illegality or wrong to the prejudice of an innocent person. (*Bemis v. Becker*, 1 Kas. 226.)    Again, he who prevents a thing being done, shall not recover damages resulting from the non-performance he has occasioned.    The plaintiff below is not within these or other exceptions, and therefore the ruling of the district court upon the demurrer must be sustained.    Further, while the reasons for the rule of the common law, that the master ought not to be responsible for injuries inflicted upon one

1. Statutory liability, no waiver of.

servant by the negligence of another servant in the same common employment, seem plausible and correct theoretically, yet we may assume that the legislature did not find the practical operations of the rule as affording sufficient security to persons engaged in the hazardous business of operating railroads; that for the protection of the lives and limbs of the employés of such companies, the legislature deemed it necessary to enact the statute making these companies liable for all damages done to any of their employés in consequence of the negligence of a co-employé. Now if the statute was enacted for the better protection of the life and limb of railroad employés, it would be against public policy for the courts to sanction contracts made in advance for the release of this liability, especially when we consider the unequal situation of the laborer and his employer. Take this illustration: In some states—and in our own—the owners of coal mines which are worked by means of shafts, are required to make and construct escapement shafts in each mine, for distinct means of ingress and egress for all persons employed or permitted to work in the mines. Such a statute is for the benefit of employés engaged in working in coal mines; but the owner of such a mine would not be permitted to contract in advance with employés for operation of the mine in contravention of the provisions of the statute. The state has such an interest in the lives and limbs of its citizens, that it has the power to enact statutes for their protection, and the provisions of such statutes are not to be evaded or waived by contracts in contravention therewith. The general principle deduced from the authorities is, that an individual shall not be assisted by the law in enforcing a contract founded upon a breach or violation on his part of its principles or enactments; and this principle is applicable to legislative enactments, and is uniformly true in regard to all statutes made to carry out measures of general policy; and the rule holds equally good, if there be no express provision in the statute peremptorily declaring all contracts in violation of its provisions void, in regard to statutes intended generally to protect the public

interests, or to vindicate public morals. (Sedgwick on Constr. of Stat. and Const. Law, 2 ed., 337, 338.) With our interpretation of the statute of 1874, and the fairly-inferred intent of the legislature in enacting it, the omission therefrom of the addition in the Iowa statute, "and no contract which restricts such liability shall be legal or binding," does not empower a railroad company to evade its liability by contract.

Counsel refer to *Rld. Co. v. Petty*, 25 Ind. 413, permitting a land-owner to waive by contract a liability imposed by statute upon a railroad company for injuring animals unless its road is securely fenced. That decision may rest upon the well-known maxim that "He who prevents a thing being done, shall not recover damages resulting from the non-performance he has occasioned." Clearly, where the owner of land through which a railroad passes, has undertaken with the company to inclose the road with a lawful fence, he ought not to recover from the company damages for an injury to his stock which results wholly from his failure to perform his contract.

Upon the trial, plaintiff below was asked by his counsel the following question:

Q. "Now I will ask you again, Mr. Peavey, judging from your experience, would you have been injured upon that occasion, if that car had approached you at the usual and proper rate of speed for making couplings?"

The question was objected to by the railway company, but the objection was overruled, and the answer was given:

A. "I don't think I would."

Another witness, Meyers, was asked by the same counsel the following:

Q. "I will ask you to state whether or not it is a fact that brakemen in making couplings of that kind are or are not compelled to rely to a great extent upon the prudence of the party handling the engine?"

Like objections were made, and overruled. The answer was:

A. "Yes, sir; they are."

The objections to the questions cited ought to have been

12—29 KAS.

sustained, as it is a general rule that opinion is inadmissible on questions which can be decided by the jury on the facts. A brakeman brought an action for injuries received in coupling the engine of the train he was engaged in operating to a car laden with timber. A witness, who was a railroad agent, and had been two years a brakeman, was asked this question: "What is the proper way to couple cars when timber projects?" The court sustained an objection to the question, and refused to permit the witness to answer. (*Hamilton v. Rld. Co.*, 36 Iowa, 31.)

*2. Opinion; rule.*

A brakeman while attempting to couple two loaded freight cars to the mail car, was crushed by the bumper of the mail car overriding that of the freight car and permitting the platform to come in contact, of which injury he died. On the trial to recover damages, the depositions of various witnesses who had been brakemen, baggage masters, and conductors upon railroads, were read in evidence, giving their opinions that if the drawheads or bumpers had been properly matched there would have been no danger of one overriding the other, and that if the drawheads had been properly matched there would have been no danger of the person being crushed between the cars in making a coupling. The matters referred to in the depositions were held not proper subject of opinion. (*Muldowney v. Railway Co.*, 36 Iowa, 462.)

A brakeman brought an action for injuries received while coupling cars. The opinions of experts that he was careless in the matter of doing the work were deemed inadmissible. (*Hopkins v. Rld. Co.*, 78 Ill. 32.)

In an action for injuries sustained while attempting to oil a part of the machinery of a steam engine, an expert engineer was asked if he thought that the plaintiff in oiling that part could have been injured unless he was careless. This was held improper. (*Buxton v. Somerset Potters' Works*, 121 Mass. 446; *Bixby v. Rld. Co.*, 49 Vt. 127; *Hill v. Rld. Co.*, 55 Me. 438; *Coons v. Railway Co.*, 65 Mo. 592; 2 Thompson on Negligence, 799; *Monroe v. Lattin*, 25 Kas. 351; *City of Parsons v. Lindsay*, 26 Kas. 426.)

"The experience of courts with the testimony of experts has not been such as to impress them with the conviction that the scope of such proof should be extended. Such testimony is not admissible in any case when the jury can get along without it, and is only admitted from necessity, and then only when it is likely to be of some value." (*Morrigan's Appeal,* 29 Mich. 5.)

The matters upon which the opinions were given in the evidence objected to, were on questions which could have been decided by the jury on the facts; and of the facts, after a full hearing thereof, they were the competent judges.

Counsel for plaintiff below suggest that even if the questions asked were incompetent, the error was immaterial. As to the second question, we might assent; but we think differently of the opinion of the injured party. His evidence was likely to have exercised great influence. At least in a close case like this, it must have been productive of some effect.

Among other instructions given is the following:

"If the jury believe from the evidence that the engineer's conduct was the proximate cause of the injury complained of, that the plaintiff's conduct was the remote cause of injury, then the plaintiff ought to recover. But if the jury believe from the evidence that the conduct of the engineer was the remote cause of the injury, and that of the plaintiff the proximate cause of the injury, then the plaintiff cannot recover."

This instruction, especially in the absence of the qualifying word "negligent" before the word "conduct," was erroneous within the views expressed in *Rld. Co. v. Plunkett,* 25 Kas. 188; and as in that case, so here—if the plaintiff below was guilty of the negligence at all, it was certainly as near as to the injury as was that of the company.

The court also instructed the jury that—

"The plaintiff was bound to exercise ordinary care and prudence in attempting to fasten the coupling to the cars, and though the jury believe from the evidence that the coupling in question was dangerous, still, if they further believe from the evidence that the accident in question is attributable to the want of ordinary care on the part of the plaintiff, then he cannot recover unless the jury further believe from the evi-

dence that the defendant was guilty of such gross negligence as implies willful injury. The jury are further instructed if they believe from the evidence that the plaintiff was injured (being at the time an employé of the defendant) in consequence of the negligence of the engineer in charge of the engine, and the plaintiff at the time was free from any contributory negligence, the plaintiff is entitled to recover."

A part of this instruction was misleading, from the fact that it was apparent from the evidence that the engineer was not guilty of such gross negligence as implies willful injury. The most that can be charged against the engineer, if anything, is that he was guilty of negligence in the application of too much steam to the engine, or in the management of the engine whereby the car cut off was sent back at a fast and unusual rate of speed. The jury found as a matter of fact, that the plaintiff below had control of the engineer as to signals, and that the engineer obeyed the signals to start, stop, and cut off. Instructions should, as far as possible, conform to the actual facts in proof, and the giving of abstract propositions of law, however good in themselves, if not applicable to the case on trial, often distracts and confuses the jury, and in cases like the one at bar, is liable to be greatly prejudicial. As there was no evidence tending to show gross negligence implying willful injury on the part of the railway company or its engineer, the trial court ought not to have used such terms in its direction.

*3. Instructions— conformity to facts in evidence.*

Further, while it is settled in this state that a party may recover for injuries done to him or his property, caused by the negligence of others, even if his negligence is slight, nevertheless this court has not adopted what is generally called the rule of comparative negligence. Under the law as settled in this state, ordinary negligence on the part of a plaintiff will defeat a recovery except in the case of wanton or willful injury. Where two parties, of each of whom the exercise of ordinary care is required, are guilty of negligence contributing to the injury of

*4. Comparative negligence, rule of, not adopted.*

one of them, the injured party cannot recover damages there-
for from the other on the sole ground that his negligence was
less than that of the other, and generally the mere fact that
the plaintiff has been guilty of less negligence than the de-
fendant will not authorize a recovery on his part. And if,
in the case at bar, the company or its engineer was guilty of
slight negligence only, the plaintiff below would not have
any right to recover, even if he were not guilty of any neg-
ligence at all, for in this class of cases a railroad company is
liable only for ordinary negligence, and not for
slight negligence. Therefore, if the plaintiff be-
low himself was guilty of ordinary negligence
contributing to the injury, he cannot recover, if
the negligence of the railway company or its engineer was
merely greater than his, for the plaintiff below must have
exercised ordinary care, and not have been guilty of ordinary
negligence. Upon a new trial, the instructions of the court
below will conform to the views herein expressed.

*5. Personal in-
jury of rail-
way employe;
action not sus-
tained.*

Within the prior decisions of this court, the damages
awarded by the jury are excessive. The plaintiff below lost
the thumb and first finger of his right hand; he
was laid up a little over a month and could not
do anything for three or four months, but he was
at no expense for surgeons, as medical assistance was fur-
nished him by the railway company. He spent a little for
drugs, and was nursed by his wife. In *Railway Co. v. Hand,*
7 Kas. 380, the injured party was hurt in the third finger of
his right hand, causing a slight deformity and some loss of
power in the hand; besides other bruises, he had received an
injury to his lung, which caused him some uneasiness and
rendered him more liable by exposure to attacks of a pul-
monary character. His counsel claimed, in the argument of
that case before this court, that the evidence adduced tended
to show that the time of the injured person, while suffering
from the immediate effects of his injuries, was worth $1,800;
that his board and physician's bills would carry these figures
to $2,000. The verdict was $5,000. Yet, KINGMAN, C. J.,

*6. Excessive
damages;
verdict set
aside.*

speaking for the court, said: "An examination of the evidence has convinced us that the damages awarded are so excessive as to show plainly that the verdict was given under the influence of passion or prejudice, and ought to be submitted to the judgment of another jury." In *Railway Co. v. Milliken*, 8 Kas. 647, it was shown that the yardman at Ellsworth was assisting in making up a train at that point; that while engaged in coupling cars, his hand was caught between the drawheads of the cars and so crushed that amputation was necessary. Mr. Justice BREWER, for the court, said in that case: "Where the sole permanent injury was the loss of a hand, which was amputated just above the wrist, without any protracted sickness or lengthy confinement, an award of $10,000 shocks the sense of right. . . . In whatever light we look upon this verdict, it seems to us to be largely in excess of a fair compensation for the injury." In *Railway Co. v. Young*, 8 Kas. 659, the injury was the loss of a hand, happening while the employé of the railway company was attempting to couple cars. The verdict was $9,000. This was also held excessive. If an award of $10,000 for the loss of a hand taken off at the wrist was so excessive as to shock the sense of right, (*Railway Co. v. Milliken,* supra,) an award of $6,500 for the loss of the thumb and finger of a hand, clearly indicates passion or prejudice on the part of the jury. Counsel for defendant in error refer to the case of *Railway Co. v. Young*, 19 Kas. 489, where a majority of this court decided not to set aside a verdict of $10,000. The first time that case was before this court it was held that $9,000 damages were excessive. It was then submitted to the judgment of another jury. Upon the second trial, the jury gave $10,000. A court must hesitate greatly before twice setting aside a verdict on the sole ground of excessive damages; and in view of the many years (nearly ten) elapsing between the injury and the final verdict in that case, and in view further of the fact that two juries had decided in favor of so large damages, a majority of this court thought they ought not to disturb the verdict solely for excessive damages. That case,

owing to these circumstances, is not parallel with this. Following the prior decisions of this court, the amount of damages given by the jury is so largely in excess of any fair compensation for the injury inflicted as to require us to interfere, and set the verdict and judgment thereon aside.

Other questions are elaborately discussed in the briefs, but sufficient has been said already to indicate the views of the court as to the declaration of the law governing the case upon another trial.

The judgment of the district court must be reversed, and the cause remanded. .

BREWER, J., concurring.

VALENTINE, J.: I concur in the decision of this case, and I concur in the most of what is said in the opinion delivered by the Chief Justice; but I am not prepared to say that I concur in all that is said in such opinion. I concur generally in what is said respecting negligence. I think it is error for a trial court to instruct the jury with reference to *gross* negligence, when the evidence does not tend to prove any such negligence. And I also think it is error for a trial court to instruct the jury with reference to *remote* negligence, when, if the evidence proves that any negligence at all was committed, it proves that such negligence was direct, proximate, and immediate. I also concur with the Chief Justice, in saying that this court has never adopted any rule that can with any degree of propriety be called comparative negligence, unless such has been done merely by the recognition of degrees of negligence, or by the recognition of the fact that in all actions for negligence (except possibly where a passenger sues a common carrier), the plaintiff, in order to recover, must not be equally guilty with the defendant, but must in fact be free from all culpable contributory negligence. This court has certainly never adopted the rule which the senior counsel on the side of the plaintiff in error in this case calls comparative negligence. This court has never held that a plaintiff, in an action founded upon negligence, could recover, where his

want of ordinary care contributed directly to the injuries complained of; but, on the contrary, this court has always held that the plaintiff, under such circumstances, could not recover, whatever might be the degree of the negligence on the part of the defendant. Of course, this court in delivering opinions has sometimes recognized the fact that there might be cases where the defendant's conduct *might* be so grossly negligent and wanton that the plaintiff *might* recover, notwithstanding his failure to exercise ordinary care; but such cases hardly come within the rules of negligence, and even in such cases this court has generally been very careful to say that the plaintiff could recover only where the injuries would have in all probability occurred notwithstanding the plaintiff's want of ordinary care. In cases like the one now before us, each party is required to exercise ordinary care, and neither party is required to exercise great or extraordinary care. The want of ordinary care is ordinary negligence, but the want of great or extraordinary care is only slight negligence; and while either party will be held to be guilty of culpable negligence, if found to be guilty of ordinary negligence, yet neither party will be held to be guilty of culpable negligence if found to be guilty of only slight negligence. This, I think, is the doctrine of all the courts, and many of the courts use similar language to express the doctrine. In Wisconsin, the supreme court, in the case of *Griffin v. Town of Willow*, 43 Wis. 509, decides as follows: "It is the settled law of this state, that 'slight negligence' is not a slight want of ordinary care, but merely a want of extraordinary care, and such negligence on the plaintiff's part will not prevent a recovery for injuries caused by a defective highway." In the case of *Cremer v. Town of Portland*, 36 Wis. 92, the court decides that "'slight negligence' is not a slight want of ordinary care, but a want of extraordinary care; and the law does not require such care, of the person injured by the negligence of another, as a condition precedent to his recovery." See also the cases of *Dreher v. Fitchburg*, 22 Wis. 675; *Ward v. M. & St. P. Rly. Co.*, 29 Wis. 144; *Hammond v. Mukwa*, 40 Wis. 135.

The terms "slight negligence," and "want of extraordinary care," are convertible terms, meaning one and the same thing.

The senior counsel in this case, on the part of the railroad company, would have this court establish the doctrine that no plaintiff, in an action for negligence, can ever recover, if he has been guilty of the slightest possible degree of negligence contributing to the injury complained of.

And then, he would have the further doctrine established, that if the plaintiff could have avoided the injury by any possible act or omission on his part, and did not do so, he was guilty of contributory negligence. It might be that he had exercised greater care in every particular than any person had ever before done; it might be that he had used greater caution than the most prudent of men would have done under like circumstances; and yet if, in the light of subsequent events, it might be seen that he could possibly have exercised still greater care or caution, he must not recover. His negligence might be infinitesimal in degree; it might be such that the most careful, cautious, prudent and diligent of men would almost inevitably have fallen into it; and yet, as counsel would say, he must not recover, for he was guilty of some negligence—slight indeed, but some; and degrees of negligence must never be counted, but the slightest possible negligence will bar a recovery. Such is not the law, and never was the law.