THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. JAMES O'MELIA.

1. CONTINUANCE — *Absence of Witness — Discretion of Court.* When a party in good faith complies with the provisions of § 317 of chapter 80, General Statutes of 1889, and has used due diligence to procure the testimony of an absent witness whose evidence is material, a continuance should ordinarily be granted, but the matter of continuance on account of the absence of a witness whose testimony is material is within the sound discretion of the trial court, and a reversal of a judgment will not be granted for a refusal to continue on account of the absence of a witness unless there has been a clear abuse of discretion. We cannot say that there has been such abuse of discretion in the denial of the motion for a continuance in this case as will call for a reversal of the judgment.

2. CONFLICTING EVIDENCE — *Question for Jury.* When there is some evidence on each material fact tending to prove the claim of plaintiff for damages, and where there is great conflict in the evidence, the trial judge should submit the facts to the jury for their verdict, under proper instructions.

3. INSTRUCTIONS — *Case, Followed.* The cause of action in this case and the cause of action in the case of *A. T. & S. F. Rld. Co. v. Hughes** (decided by the supreme court of Kansas July 6, 1895, and not yet reported), both originated at the same time, and both out of the same failure of the train on which the parties were passengers to stop at its station at Peterton. Each party leaped from the moving train; Hughes was killed, and suit was brought by his widow for the recovery of damages for the wrongful and negligent causing of his death; O'Melia was injured, but survived. The cases were both tried in the same court before the same judge, one on the 13th day of November, and the other on the 14th day of November, 1890. The same instructions were given in both cases in relation to the question of negligence. The widow of Hughes recovered judgment for over $2,000, and the case was affirmed by the supreme court. O'Melia recovered less than $2,000, and this case was duly certified down by the supreme court to the appellate court for its decision. The construction put upon the instruction of the trial court by the supreme court, followed.

---

* See 40 Pac. Rep. 919.

MEMORANDUM.—Error from Osage district court; WILLIAM THOMSON, judge. Action by James O'Melia against the Atchison, Topeka & Santa Fe Railroad Company to recover damages for bodily injuries. Judgment for plaintiff. Defendant brings the case here. Affirmed. Opinion filed September 6, 1895.

The statement of the case, as made by JOHNSON, P. J., is as follows:

This was an action to recover damages for personal injuries alleged to have been sustained by James O'Melia, while a passenger on one of the Atchison, Topeka & Santa Fe passenger trains, while being conveyed from Scranton, Kas., to Peterton, on the 20th day of March, 1890, at about 2 o'clock A. M. April 5, 1890, plaintiff filed his petition in the office of the district court of Osage county, Kansas, to which petition the defendant interposed a demurrer, and at the November term, 1890, the demurrer was sustained, and the plaintiff was given leave to file an amended petition. Plaintiff, for his amended petition, alleges the following facts as his cause of action:

"The Atchison, Topeka & Santa Fe Railroad Company is a corporation duly organized under the laws of the state of Kansas; that the plaintiff is 60 years of age; a coal-miner and laborer by occupation; had always enjoyed the best of health, and was well and stout, and had been all his life until he received the injuries complained of in his petition; that he could always do a good day's work before he received the injuries complained of; that he had been engaged as a coal-miner for several years in the coal-mines in Osage county, Kansas, and he was so engaged at the time he received the injuries. He further says that he was in the town of Scranton, Osage county, Kan-

sas, on the 19th day of March, 1890, and he, with others, desired to go by rail from Scranton to Peterton, and that on said day he purchased one first-class passenger ticket of defendant's ticket agent at Scranton, Kas., and on the morning of the 20th of March, 1890, at 1 o'clock A. M., he boarded the defendant's regular west-bound passenger train westward to the town of Peterton, arriving at Peterton at about 2 o'clock A. M.; that at the time when the train arrived at the station in Peterton there was no light in the ticket office, nor elsewhere about the station; that the plaintiff was in company with several others who also had tickets from Scranton to Peterton on the same train; that the conductor took up ticket of plaintiff as well as tickets of his companions who were with him on the train. When the train came near the station of Peterton, the same being a regular station on defendant's line of road, the conductor in charge of said train gave said plaintiff, James O'Melia, and his companions who were with him, to understand and be informed that said train would not stop still at the station or elsewhere in Peterton, but would slacken its speed so that plaintiff could safely alight from and leave said train at the said station of Peterton, this being a train advertised and scheduled to stop at said station and accustomed so to stop; that the conductor came to the plaintiff and requested him and commanded him to be quick, as he, the plaintiff, must get off, and requested and made the plaintiff hurry, and invited, requested and commanded him to get off; that the train was not stopped at the station of Peterton; that the train was slowed up, and just as the plaintiff was in the act of leaving the train the conductor gave the signal with his lantern, and the speed of the train was greatly increased, and the plaintiff, as he left the train, was thrown down and hurt; that at the time of the plaintiff's leaving the train, before the sudden start was given it, the speed of the train was not apparently or obviously unsafe to the plaintiff; and the plaintiff at the time believing, from the assurances, invitations and commands of the conductor, that it

was safe for him to alight, in compliance with the order, command, solicitation and request of said conductor, this plaintiff and all his said companions did leave said train at Peterton as commanded and instructed so to do by said conductor who was in charge of said train as aforesaid. And this plaintiff says that he had had little or no experience in traveling on railroad cars, and had had no experience whatsoever in alighting from a moving train, and in consequence of said want of knowledge and experience on his part he depended and relied wholly on the command and direction to him by the conductor to get off of said train, and at the time he did leave and get off of said train, said conductor then and there assured him that he could do it in perfect safety; that said statements were made to said plaintiff by said conductor and were made to his companions in his presence and hearing. And this plaintiff further says that his eyesight and hearing are and were somewhat impaired on account of age, which was also known at that time to said conductor, and that said plaintiff says that the said conductor well knew that the plaintiff and his companions were desirous to and intending to get off said train at the station of Peterton, and were alighting from and getting off said train; that said train was running at an unsafe and dangerous rate of speed for passengers, and especially of the age of this plaintiff, to alight and get safely off said train when plaintiff and his companions were alighting and did alight from said train, but the speed of said train was unknown to said plaintiff, but was well known to said conductor; that said plaintiff and his companions got off said train on the depot platform at the station of Peterton, at 2 o'clock A. M., on the 20th day of February, 1890, and it was very dark at that time in the depot at Peterton, and also on the platform of said depot; that said plaintiff was commanded and solicited to get off said train at the time he did by the conductor in charge of said train, and that in getting off said train this plaintiff used due care and diligence in all respects, but, on the contrary, the defendant

was grossly negligent in not stopping its train at the platform or elsewhere in Peterton, and in not having any lights in the depot or elsewhere or on said platform, and was further negligent by said conductor commanding, soliciting and requesting this plaintiff to get off said train when the same was in motion, and that said defendant company was further grossly negligent by reason of said conductor telling this plaintiff that the plaintiff could alight from said moving train in safety, which statement so made by said conductor was believed by this plaintiff and relied on and acted on by him ; that when said plaintiff alighted on said platform he was thrown down on said platform, and was permanently injured in his arm, legs and spine and head ; that he has suffered great bodily injury, and has suffered great pain, and that said injuries are permanent, incurable, and lasting, to the plaintiff's damage in the sum of $10,000, and prays damages for that sum.''

To this amended petition, the defendant railroad company filed its answer in the following words :

''Comes now the defendant in the above-entitled cause, and for answer to plaintiff's amended petition filed in said cause, says that it denies each and every, all and singular, the allegations in said amended petition contained.''

Upon these issues the parties proceeded to the trial of said cause before a jury, and during the trial there were several objections and exceptions taken to the ruling of the court in the admission of testimony, and in the refusing to permit certain other testimony to be given. After the evidence had all been concluded, and at 4 : 30 P. M., the defendant asked that the case be continued until the next morning at 8 : 30 A. M., and filed its affidavit showing that it was taken by surprise by the absence of William W. Hopkins, a competent witness for the defendant ; and, to enable the defendant to procure the personal presence and

attendance of said Hopkins as a witness for defendant and in support of said motion, defendant filed an affidavit in which it set out that the witness, Hopkins, resided at Osage City, in Osage county, and about eight miles distant from where the court was being held; that the defendant had only learned the day previous that the said Hopkins would be a material witness on the trial of said cause, and that as soon as it was learned that Hopkins would be a material witness, the attorney representing the defendant railroad company filed its præcipe and caused a subpœna to be issued for said witness and placed in the hands of the sheriff to be served; that the attorney representing the defendant on the next day saw the sheriff and was informed that the subpœna had been served, and was also informed by persons who were acquainted with the witness, Hopkins, that they had seen Hopkins in the town of Lyndon, the county-seat of Osage county, during the day on which the case was being heard, but when the time came to call the said Hopkins he was not to be found, and not until after the evidence was closed did the counsel for the railway company discover that Hopkins was not present in town in obedience to the subpœna; that Hopkins was in town and had been there on business; that the service of the subpœna had been by leaving a copy at his residence at Osage City after Hopkins had departed from his home, and Hopkins knew nothing of the fact that he had been served as a witness until he returned home in the evening after the trial was over. The affidavit sets forth such a state of facts as shows that Hopkins's testimony would have been material on the trial of the cause, but the court overruled the motion to continue the case until the next morning, to enable counsel to procure the presence of the said witness, and require

counsel to proceed with the argument of said case, commencing at 7 o'clock in the evening, and completing the argument during the night. To the action of the court in refusing to continue the case until the next morning, the attorney for the railroad company duly excepted. After the testimony had been closed and the motion of the railroad company to continue had been denied, the court proceeded to instruct the jury, in writing, on the law in relation to said case, stating to the jury generally the issues presented to them for trial, on whom rests the burden of proof, giving to the jury also the definition of the phrases "ordinary care," "slight negligence," and "gross negligence." The third and fourth paragraphs of the instructions of the court to the jury are as follows :

" 3. The court instructs the jury that while a person is bound to use reasonable care to avoid an injury, yet he is not held to the highest degree of care and prudence of which the human mind is capable ; and to authorize a recovery for an injury he need not be wholly free from negligence, provided his neglegence is slight, and the other party be guilty of gross negligence, in comparison therewith, as defined in this instruction.

"4. The court further instructs the jury that if they believe from the evidence that the plaintiff was exercising ordinary care and prudence at the time in question, and was guilty of only slight negligence which contributed to the injury, and that the conductor of the train, being a servant of the defendant, was wanting in the care and prudence which a very careless man would ordinarily exercise under the same circumstances, then the defendant was guilty of gross negligence, and if the jury further believe from the evidence that such gross negligence was the cause of the injury in question, as charged in the petition, and that the neglegence of the plaintiff was but slight when compared with the negligence of the defendant, then they should find for the plaintiff.

"5. You are instructed that, in determining the question of negligence in this case, you should take into consideration the situation and conduct of both parties at the time of the alleged injury as disclosed by the evidence ; and if you believe from the evidence that the injury complained of was caused by the negligence of defendant's servants as charged in the petition, and without any greater want of care and prudence on the part of the plaintiff than was reasonably to be expected from a person of ordinary care and prudence in the situation in which he found himself placed, then the plaintiff is entitled to recover.''

"7. You are instructed that, in determining the question of negligence in this case, you should take into consideration the conduct of both parties at the time of the alleged injury as disclosed by the evidence, and if you believe that the injury complained of was caused by the negligence of the defendant's servants as charged in the petition, and without any greater want of care and prudence on the part of the plaintiff than was reasonably to be expected from a person of ordinary care and prudence in the situation in which he found himself placed, then the plaintiff was entitled to recover.

"8. The court instructs the jury that though they believe from the evidence that the defendant was guilty of negligence upon the occasion in question, and that negligence contributed to the injury complained of, yet if the jury further believe from the evidence that the plaintiff was also guilty of an equal, or nearly equal, degree of negligence directly contributing to the injury, and without which it could not have occurred, then the jury should find for the defendant.

"9. In this case, if you believe from the evidence that the plaintiff and the agents and servants of the railroad company were guilty of gross negligence, contributing to the injury complained of in this action, then you should find in favor of the defendant.''

The defendant requested the court to give the following instruction to the jury :

"I charge you that if the plaintiff was guilty of any want of ordinary care and diligence, however slight, which contributed directly to produce the injury of which he complains, then he cannot recover in this case, and your verdict should be for the defendant."

The court refused to give this instruction, and the defendant duly excepted. After the case had been argued the jury returned into court with their verdict in favor of the plaintiff for $650, and made the following special findings :

"Ques. 1. Is is not fact that on the morning of the 20th of March, 1890, the Atchison, Topeka & Santa Fe railroad passenger train on which plaintiff was being carried, and which said plaintiff had boarded at Scranton, in Osage county, Kansas, did come to a full stop at Peterton station on said road in said county? Ans. No.

"Q. 2. Was not said plaintiff at Mrs. Gibson's, in Scranton, a place where intoxicating liquors were kept, for some hours before he boarded the passenger train of defendant at Scranton? A. No.

"Q. 3. Was not Alex. O'Melia, James Hughes, grandson of plaintiff John Hughes, and plaintiff, all at Mrs. Gibson's place in Scranton for some hours before they boarded the train of defendant at Scranton for the purpose of going to Peterton? A. No.

"Q. 4. If you find that the defendant or the employees of defendant company were negligent, and that the injury of the plaintiff was caused by the negligence of defendant or its employees, please state what such acts of negligence were? A. (1) Neglect to stop the train; (2) neglect to attend passengers who arrive at their destination in the dark hours, and light the same until their embarkation is safely consummated.

"Q. 5. State in what the negligence of the defendant or defendant's employees consisted, if you find

that the injury of plaintiff was caused by fault of defendant or defendant's employees.   A. (1) Neglect to stop the train; (2) neglect on part of the defendant to attend plaintiff with light in his departure from the train.

"Q. 6. Were the mental faculties of plaintiff free from the influence and effect of alcoholic liquors at the time he was injured at Peterton on the morning of March 20, 1890?   A. Yes.

"Q. 7. Was not plaintiff under the influence of intoxicating liquors at the time of his injuries at Peterton on the morning of March 20, 1890?   A. The testimony does not establish the fact of said influence. No."

Defendant filed a motion for a new trial, setting forth 11 of the statutory grounds for a new trial. The motion was overruled, and judgment rendered according to the verdict of the jury for $650.   The railroad company brings the case here for review, and alleges various errors on the part of the court.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error.

*Henry B. Hughbanks, Joseph G. Waters,* and *Frank A. Hay,* for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: The first error complained of is the overruling of the motion of the railroad company for a continuance of the case from 4:30 P. M. until the convening of the court the next morning, to enable the defendant below to procure the evidence of W. W. Hopkins, who resided in the county within eight miles of where the court was being held.   The affidavit of the attorney for the railroad company sets out fully all the facts in relation to the efforts made to procure the presence of the witness and the materiality of his tes-

timony, and that he would be able to procure the attendance of the witness at the convening of the court the next morning. Where a party in good faith complies with the requirements of § 317, chapter 80, General Statutes of 1889, and has used due diligence to procure the testimony of an absent witness whose evidence is material, a continuance should ordinarily be granted; but the matter of a continuance on account of the absence of a witness whose testimony is material is within the sound discretion of the trial court, and a reversal of a judgment will not be granted for the refusal to continue on account of the absence of witnesses, unless there has been a clear abuse of such discretion. We cannot say that there has been such abuse of discretion in the denial of the motion for a continuance in this case as will call for a reversal of the case. This motion, coming as it did near the usual hour for adjournment of the court for the day, and the party only desiring until the convening of the court next morning, ought to have appealed strongly to the court in granting the short time asked to secure the witness.

The second error complained of in the brief of counsel for the plaintiff in error is that the judgment was rendered for O'Melia when, under the evidence and the law, the verdict and judgment should have been for the railroad company. We have examined the evidence in this case very carefully, and are unable to say, as a matter of law under all the evidence, that the court should have directed the jury to return a verdict in favor of the railroad company. There is great conflict in the evidence, which it is unnecessary for us to point out or discuss in this opinion, but it was a question of fact as to whether the railroad company was liable for the injury sustained by O'Melia.

There was some evidence on each material fact tending to prove the plaintiff's claim for damages, and it was the duty of the trial judge to submit the facts to the jury under proper instructions.

The third error complained of by the plaintiff in error is in the instructions given by the court to the jury. The charge of the court is quite full, and contains 19 separate paragraphs. The particular instructions claimed to be erroneous are found in the third, fourth, eighth and thirteenth paragraphs. It is insisted by counsel that these instructions lay down the doctrine of comparative negligence, and ignore entirely the rule of contributory negligence. The writer of this opinion is disposed to agree with counsel for the plaintiff in error, and is of the opinion that these instructions are on the border-line of comparative negligence, and that they seem to ignore the rule of contributory negligence. The doctrine of comparative negligence has been repudiated by the supreme court of this state. (*K. P. Rly. Co. v. Peavey*, 29 Kas. 180; *Howard v. K. C. Ft. S. & G. Rld. Co.*, 41 id. 408; *A. T. & S. F. Rld. Co. v. Morgan*, 31 id. 77.)

Beach, in his work on Contributory Negligence, § 26, says:

"The doctrine of comparative negligence, being so entirely at variance with the accepted rule of law concerning contributory negligence, has very naturally provoked much sharp criticism, and the courts of other states repudiate it with emphasis."

In the case of *O'Keffe v. C. R. I. & P. Rly. Co.*, 32 Iowa, 467, Cole, J., delivering the opinion of the court, says:

"The well-established law of this state is that in an action to recover damages for the negligent act of the defendant, the plaintiff will not be entitled

to recover if his own negligence contributed directly to the injury. In other words, this court recognizes and applies the doctrine of contributory negligence and not the doctrine of comparative negligence. The latter doctrine obtains only in Illinois and Georgia, while the former obtains in the other states."

In the case of *Railway Co. v. Jones*, 95 U. S., 442, Mr. Justice Swayne, delivering the opinion of the court, says:

"One who by his own negligence has brought the injury upon himself cannot recover damages for it. Such is the rule of the civil and common law. The plaintiff in such cases is entitled to no relief; but where the defendant has been guilty of negligence also in the same connection, the result depends upon the facts. The question in such case is, (1) whether the damage was occasioned entirely by the negligence or improper conduct of the defendant; or, (2) whether the plaintiff himself so far contributed to the misfortune, by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part the misfortune would not have happened."

We are met in this case with the approval of these instructions by the supreme court in the case of the *A. T. & S. F. Rld. Co. v. Hughes,** (decided by the supreme court of Kansas July 6, 1895, and not yet reported.) The cause of action in both of these cases originated at the same time, and each happened on account of the failure of the railroad company to stop its train at the station of Peterton, and each of the parties leaped from the moving train. Hughes was killed, and suit was brought by his widow to recover damages on account of the wrongful and negligent act causing his death. O'Melia was injured and survived, and brought this action for the injuries sustained.

* See 40 Pac. Rep. 919.

Both cases were tried in the same court, before the same judge. This case was tried on the 13th day of November, 1890, and the Hughes case on the 14th day of November, and the same instructions were given in each case, so far as they related to the question of negligence. The widow of Hughes recovered over $2,000 damages, and her case was retained in the supreme court. In the case of O'Melia the judgment was for less than $2,000, and was duly certified by the supreme court down to this court for its decision, and we feel bound to adopt the construction put upon the charge of the court by the supreme court. JOHNSTON, J., delivering the opinion of the court, says:

"It is next insisted that the court erred in its instructions to the jury by requiring the application of the rule of comparative negligence, in its instruction in regard to gross negligence, and in other respects in the giving and refusing of instructions. The court in its charge stated the rules which govern where there is mutual or concurring negligence. It also recognized different degrees of negligence, and, in doing so, to some extent seemed to place the gross negligence of the company against the slight negligence of the deceased. Evidently the trial court had in mind some of the decisions of this court where it is held that a slight inattention to duty, which is not the proximate cause of the injury, does not bar a recovery for injury resulting from the negligence of another. Although some of the language employed was objectionable, it is clear that the court did not indorse the doctrine of comparative negligence, nor give the jury to understand that if Hughes was guilty of ordinary negligence contributing to his death, there might be a recovery, because the company was guilty of greater negligence. The passenger is required to exercise ordinary care, and his failure to exercise the highest or extraordinary care will not preclude a recovery for an injury caused by the gross or ordinary negligence of

the railroad company. It is conceded that extraordinary care is not required of a plaintiff who brings an action of negligence, and that slight negligence on his part will not defeat a recovery. In the case of *Railway Co. v. Peavey*, 29 Kas. 180, cited by plaintiff in error, it is said that 'It is settled in this state that a party may recover for injuries done to him or his property caused by the negligence of another, even if his negligence is slight.' While this view was adopted and degrees of negligence were recognized, at the same time the court plainly instructed the jury, and kept it before them throughout the charge, that if Hughes failed to exercise ordinary care and prudence in jumping from or leaving the train, there could be no recovery for his death. Taking all the instructions together, we think the jury was not misled by the language of the court which is complained of, and that, under the decisions, it cannot be held that prejudicial error was committed in charging the jury as to the care required of the company and of the deceased. (*Railway Co. v. Rollins*, 5 Kas. 167 ; *Sawyer v. Sauer*, 10 id. 466 ; *Railway Co. v. Pointer*, 14 id. 37 ; *Railway Co. v. Young*, 19 id. 488 ; *Railway Co. v. Richardson*, 25 id. 391 ; *Railway Co. v. Peavey*, 29 id. 180 ; *Railway Co. v. Henry*, 36 id. 565 ; 14 Pac. Rep. 1.) The testimony which was introduced warranted the court in stating the rule of gross negligence to the jury, and, after an examination of the entire charge, we are satisfied that the remaining objections to the rulings upon the instructions given and refused are not substantial, nor can error be predicated on them.''

Plaintiff in error insists that, under the special findings of fact of the jury, it appears that there was no negligence on the part of the railroad company and its employees in charge of the train. Substantially the same findings of fact were made in the *Hughes Case*, just referred to, and the supreme court sustained the judgment of the district court over these objections. The court, in relation to the special findings, says : '' Some objections are made to the answer given

by the jury to the special question submitted, but we find nothing substantial in them." We think there was testimony to sustain the findings that were made, and we can see no such inconsistency in the findings as will justify a reversal. The judgment of the district court is affirmed.

All the Judges concurring.