## Ernest Hill v. Western Union Cold Storage Co.

1.    INSTRUCTIONS—*To Find for the Defendant—When Improper.*— Where there is evidence fairly tending to sustain the issues in behalf of the plaintiff, the weight of which ought to be submitted to the jury, the trial court may properly refuse to instruct the jury to find for the defendant.

Trespass on the Case, for personal injuries.    Trial in the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Judgment for defendant by direction of the Court.    Appeal by plaintiff. Heard in the Branch Appellate Court at the October term, 1898.    Reversed and remanded.    Opinion filed March 14, 1899.

This action was brought by appellant to recover for injuries to his person by being thrown from an elevator.

. The second count to the amended declaration is the only one that remained in the case to the end of the trial.

That count alleges that the defendant (appellee) maintained a cold storage warehouse and rented space in the same to various persons for the purpose of storing goods; that the control and management of the building and machinery therein was at all times in said defendant; that said defendant maintained within said building an elevator for the purpose of hoisting merchandise and carrying persons renting space in said building, and the employes of persons renting space in said building; that the defendant permitted employes of persons renting space, who were in said building on their employer's business, to use said elevator and the various ropes or cables controlling and used in operating said elevator; that the plaintiff, prior to the 9th day of July, 1895, was employed in said building and was permitted by the defendant to use the elevator and cables or ropes controlling said elevator, and that at no time prior to the 9th day of July, 1895, had he become aware of or had any notice of any defect in said elevator or machinery controlling and operating the same; that it was then and there the duty of said defendant to furnish, employ and maintain safe and perfect machinery in connection with and to be used in and about said elevator; that on the 9th day of July, 1895, plaintiff was employed by M. J. Power, a person who had rented storage space in said building; that plaintiff's duties were to examine certain merchandise belonging to his employer, which were stored on the fifth floor of said building; that at five o'clock in the afternoon of the 9th of July, 1895, plaintiff was on the fifth floor of said building, and while using all due care and caution, approached said elevator and pulled the rope or cable controlling or used in operating the same; that said elevator arose from one of the lower floors to the fifth floor, whereupon the plaintiff reversed said rope or cable, and said elevator came to a stop and remained stationary at the landing of said fifth floor;

that plaintiff, while using all due care and caution, stepped forward and came upon the floor or platform of said elevator, and that then and there, and immediately after he came upon said floor or platform, said elevator suddenly and without any warning whatever, bounded, jumped, jerked, or shot upward by reason of the carelessness, recklessness and negligence of the defendant in allowing air to accumulate in the hydraulic cylinder used in connection with the operation of said elevator; that in consequence of said negligence, plaintiff was violently thrown, pushed or jerked from said elevator and caused to fall down the cylinder shaft connected with said elevator, whereby, etc.

It will be observed that the only negligence charged in the declaration is in allowing air to accumulate in the cylinder used in connection with the operation of the elevator.

It was admitted by the defendant, at the trial, that it was operating the building; that there was an elevator therein, and that plaintiff was hurt while trying to operate the elevator.

The plea of the general issue, which was the only plea, put in issue all other material facts.

At the conclusion of all the evidence the trial judge directed a verdict of not guilty, and judgment was entered upon the verdict. The plaintiff now appeals.

PARKER & PAIN, attorneys for appellant.

The motion to exclude the entire evidence from the jury, and to instruct the jury to find for the defendant, is in the nature of a demurrer to evidence, in this, that it admits not only all that the testimony proves, but also all that it tends to prove. Bartelott v. International Bank, 119 Ill. 259; Chicago & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132.

It is only where the evidence, with all fair and legitimate inferences therefrom, is so insufficient to sustain a verdict for the plaintiff that the court must set it aside if rendered, that the court will be justified in directing a verdict for the defendant. Pullman Palace Car Co. v. Laack, 143 Ill. 251, 252; Siddall v. Jansen, 168 Ill. 43; Chicago & Alton Ry.

Co. v. Adler, 129 Ill. 335; Simmons v. Chicago, etc., R. R. Co., 110 Ill. 346; C., R. I. & P. Ry. Co. v. Lewis, 109 Ill. 120; Goodrich v. Lincoln, 93 Ill. 360; Phillips v. Dickerson, 85 Ill. 11; L. S. & M. S. R. R. v. Johnsen, 135 Ill. 641; Purdy v. Hall, 134 Ill. 298; L. S. & M. S. R. R. v. Richards, 152 Ill. 59.

In cases where there is no evidence tending to support the judgment, or where the evidence is so insufficient that the trial court would be required to set the verdict aside on the ground that there was no evidence to sustain it, in case a verdict should be rendered for the plaintiff, the court might properly instruct the jury to find for the defendant. Weber Wagon Co. v. Kehl, 139 Ill. 644.

Where there is some evidence tending to support every. essential allegation in the declaration, it is the province of the jury to say how much weight is to be given such evidence, and to determine whether the evidence is insufficient to prove the proposition. Poleman v. Johnson, 84 Ill. 269.

Also where the evidence given at a trial with the inferences properly arising therefrom are not insufficient to support the verdict in the plaintiff's favor, an instruction to the jury to find for the defendant will be properly overruled. Chicago Drop Foundry Co. v. Van Dam, 149 Ill. 337.

Where there is evidence tending to prove a cause of action, it is an invasion of the province of the jury to instruct them that the plaintiff can not recover. Chicago & West Division Ry. Co. v. Mills, 105 Ill. 63; The Wight Fire Proofing Co. v. Poczekai, 130 Ill. 139.

It is a settled doctrine of the Illinois courts that what is or is not negligence in a particular case, is a question of fact to be found by the jury. Chicago & Alton Ry. Co. v. Bonifield, 104 Ill. 223.

In Cicero & Proviso St. Ry. Co. v. Meixner, 160 Ill., the court, at page 323, says:

" Negligence is ordinarily a question of fact. Where the evidence on material facts is conflicting, or where on disputed facts fair-minded men of ordinary intelligence may differ as to the inferences to be drawn, or where on even a

conceded state of facts a different conclusion would reasonably be reached by different minds, in all such cases, negligence is a question of fact.   With all the facts considered, if there is a reasonable chance of conclusions differing therefrom, then it is a question for the jury."

What is ordinary care, depends on the circumstances of each individual case.   West Chicago St. Ry. Co. v. Manning, 170 Ill. 417.

What was the proximate cause of the injury was a question of fact which should have been left to the jury to determine.   West Chicago St. Ry. Co. v. Feldstein, 169 Ill. 139.

John A. Post and John B. Brady, attorneys for appellee.

A mere scintilla of evidence, tending to prove a certain fact, does not justify a court in leaving a case to a jury There must be evidence upon which the jury can reasonably and properly conclude that such fact exists.   The question is not whether there is no evidence to prove the fact, but whether it is sufficient.   Wheelton v. Hardisty, 8 El. & Bl. 231; Beaulieu v. Portland Co., 48 Me. 291; Ryer v. Wambwell, L. R., 4 Ex. Ch. 32; M. R. Co. v. Jackson, L. R., 3 App. Cas. 193; Com. of Marion Co. v. Clark, 94 U. S. 278.

Where the evidence will not warrant a verdict in favor of the party producing it, the court should direct a verdict. Tefft v. Ashbaugh, 13 Ill. 602; Abend v. Terre Haute, etc., R. R. Co., 111 Ill. 202; Doane v. Lockwood, 115 Ill. 490; Penn Co. v. Backes, 133 Ill. 255; Ward v. Chicago, 15 Ill. App. 98; Phillips v. Dickerson, 85 Ill. 11; Simmons v. Chicago, etc., R. R. Co., 110 Ill. 340; Com. Ins. Co. v. Scammon, 123 Ill. 601; Eddy v. Gage, 147 Ill. 162; Anderson v. McCormick, 129 Ill. 308; Roden v. Chicago, etc., R. Co., 30 Ill. App. 354; Edwards v. Hushing, 31 Ill. App. 223; Spannagle v. Chicago, etc., R. R. Co., 31 Ill. App. 460; Huschle v. Morris, 31 Ill. App. 545; Duggan v. Peoria, etc., R. R. Co., 42 Ill. App. 536; Foster v. Wadsworth-Howland Co., 48 N. E. 163; Siddall v. Jansen, 48 N. E. 191.

There may be decisions to be found which hold that if there is any evidence—even a scintilla—tending to support

the plaintiff's case, it must be submitted to the jury.    But we think the more reasonable rule, which has now come to be established by the better authority, is, that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff, that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. Simmons v. Chicago & Tomah R. Co., 110 Ill. 340; Pleasants v. Fant, 22 Wall. 120; Randall v. Balt. & Ohio R. Co., 109 U. S. 478; Metropolitan R. Co. v. Jackson, 3 App. Cas. 193; Reed v. Inhabitants of Deerfield, 8 Allen, 522; Skellenger v. Chi. & N. W. R. Co., 61 Iowa, 714; Martin v. Chambers, 84 Ill. 579; Phillips v. Dickerson, 85 Ill. 11.

Where the undisputed evidence so conclusively proves a certain fact that the court would be compelled to grant a new trial, because a verdict to the contrary would be against the weight of the evidence, the court may take the case from the jury.  16 Am. & Eng. Enc. of Law, 466; Ft. S., C. & M. Co. v. Sweeney, 15 Kan. 244; Werk v. Ill. Steel Co., 54 Ill. App. 302; Werk v. Steel Co., 154 Ill. 427; Bloch v. Swift & Co., 161 Ill. 107; C. & N. W. Ry. Co. v. Hansen, 166 Ill. 623; Denny v. Williams, 5 Allen (Mass.), 1.;

Where an instruction is given or asked at the close of the plaintiff's testimony, instructing the jury to return a verdict at that stage of the case, the only question raised by the instruction, and the only one which can be considered by this court, is whether or not there was at that time evidence tending to prove the averments of plaintiff's declaration.  Cicero & P. R. Co. v. Meixner, 160 Ill. 320; 43 N. W. 823; Pullman Car Co. v. Laack, 143 Ill. 242; 32 N. E. 285 Simmons v. Ry. Co., 110 Ill. 346; C., R. I. & P. Ry. Co. v. Lewis, 109 Ill. 120; Goodrich v. Lincoln, 93 Ill. 360; Phillips v. Dickerson, 85 Ill. 11; L. S. & M. S. R. R. Co. v. Johnsen, 135 Ill. 641, 26 N. E. 510; Purdy v. Hall, 134 Ill. 298, 25 N. E. Rep. 645.

Where, however, the motion to instruct the jury to return a verdict for defendant is made at the close of all the

evidence in the case, and allowed by the court, it must be that the evidence, both for the plaintiff and defendant, with all the inferences which the jury might justifiably draw therefrom, is not sufficient to support a verdict for the plaintiff if one should be returned. L. S. & M. S. R. R. Co. v. Richards, 152 Ill. 59, 38 N. E. 773, and authorities cited; Siddall v. Jansen et al., 48 N. E. 191.

MR. JUSTICE SHEPARD delivered the opinion of the court.

It can not be seriously questioned but that there was abundant evidence to go to the jury upon the controversy as to whether or not permission, express or implied, was given by the superintendent of the defendant corporation to the appellant to use the elevator, and it was admitted, upon the trial, that " there is no dispute that Hill (appellant) used the elevator from three to five times a day." The jury should not have been cut off from their right to consider the evidence upon both sides of that question and determine what the truth was in that regard, if a sufficient case in other respects was made out for them to found a verdict upon.

The most important inquiry is as to whether there was, or not, sufficient evidence upon the specific negligence charged in the declaration, in allowing air to accumulate in the cylinder, to require the case to go to the jury.

And the inquiry is so controlling as to demand that we go to the evidence, and all of it, upon that point.

The plaintiff testified:

" When I pulled the elevator up it came up and stopped flush at the fifth floor; I am satisfied that the elevator was not bobbing or moving at that time. About twenty seconds elapsed between the time that I brought the elevator to a stop and threw up the gate and got upon it; and just as I got on the elevator it suddenly shot up, jerked or jumped. All I know is there was a sudden upward movement; I do not know what caused it; I never knew it to happen before."

Forslund, an expert in the manufacture and inspection of elevators, testified in behalf of plaintiff, that he was

familiar with every part of the Hale hydraulic elevator, and that he knew the one in question, and being specifically questioned, he testified as followed :

" Q.   Suppose this particular elevator was stationery at one of the floors of the building, and that a person, weighing perhaps 155 pounds, should step upon that elevator and it should jump violently with him, what would be the cause of such jumping ?  A.   Any hydraulic elevator might act in that manner under certain conditions; not alone a Hale elevator but any other elevator might act in the same way. It may be attributable to any one cause.   I say there may be more than one cause.   I want to qualify that remark that it might be attributable to any other cause.   There is one cause alone wherein an elevator would jump violently, in my opinion.

The Court :  Only one cause ? .

A.   Yes, sir; when it would jump violently or suddenly or radically.

Q.   What is the cause that you refer to ?  A.   I will say that it would be the presence of air in the cylinder. The presence of air would make an elevator jump very violently or quickly or without any warning scarcely, and it would be brought about by a load on the elevator.   The air is very elastic, and the more air in the cylinder the more erratic the elevator would become.  I should say that the cock that is used to free the cylinder of air should be operated at the farthest every two days.   It should be opened to allow this air to escape every two days at the very farthest.   Water brings a certain quantity of air into the cylinder.   Air will accumulate in all hydraulic elevators if there are no means of getting rid of the air either automatically or by hand.   There would be a small accumulation of air in smaller or larger quantities, depending on the location of the machine and its character and the way it was put up—the way the pipes are put in that lead to it.

*Cross-examination.*

I was an elevator inspector two years.   I think I examined this elevator just seven days before the accident.   I can not answer with certainty whether my assistant or I examined this elevator; my assistant will go around with me and he would examine the elevator and I would mark the card O K.   I did this continuously.   Air accumulates in nearly every kind of an elevator; it is bound to, more or

Hill v. Western Union Cold Storage Co.

less.  I never said this Hale elevator was any great excep-
tion to the general rule.  In a case where elevators bob, it
is because the valve is not shut off, or because the pistons
leak more or less, or the valves and the water is not con-
fined on every side of the piston so as to hold the piston
perfectly stationery.  I don't say absolutely that the sudden
upward or forward movement of the elevator was caused
by air being in the cylinder.  I say that might have been
the cause.  There might be other causes.  The valve might
give way and allow the water to back up under this piston
and then the water on top of the piston would drive the
elevator up; that might happen instantaneously.  Or the
breaking of a pipe might cause it.

Q.  How long would it take for air to get into the
hydraulic cylinder and cause a sudden upward movement?
About what length of time would have to elapse?  A.
Well, that sudden upward movement would never occur
unless the elevator was touched by some weight.  I could
not say how long it would take to get enough air into the
hydraulic cylinder to make it take that sudden upward
movement.  This air accumulation might be there; and a
sudden weight being placed there at that time might let
loose those check valves, and that would cause it to jump.
Any air there might have been accumulated in that piston,
and the check valve might have been stopped or stuck in
some manner, so that a sudden shock released it.  That
released the check valve, and the air in there drove the piston
down.  I made such an examination as inspectors ordi-
narily make.  I didn't discover any air about the cylinder,
because I didn't try; it might have been there only a day
or two.  Air might have been there in a small quantity on
the day that I inspected the elevator.  It could have been
there in a sufficient quantity to make the elevator move
when a man stepped on it, if the check valve opened sud-
denly; that check valve is supposed to be always openable.
I didn't say I could not have discovered air if there was
any there at that time.  I say I could not, with the exami-
nation that I made.  If there is air in the piston, you could
hear it when it blew out; you could feel it.  I have many
times myself gone up and let the air off.  I did not notice
any in this case, or it was not noticed.  I did not say there
was any air there at that time when that elevator was exam-
ined; why, I always see if there is any air in the cylinder.
According to the question put, I should say there might
have been air there at the time of the accident.

### Re-direct Examination.

If this valve had broken so that the water passed through the piston, they could not run the elevator at all. If a pipe had broken they could not run the elevator until after repairs had been made."

Knuth, the chief engineer for the defendant corporation, being called for the plaintiff, testified:

" I examined the hydraulic elevator, as a rule, about once a week. I don't know whether I had examined the elevator on the day of the accident, but the last time that I examined it would not have been any longer than a week previous to the accident."

And afterward, being called as a witness for defendant, he testified as follows:

" The first intimation that I had of the accident was through the superintendent, Mr. Lewis; he informed me of the fact. I went over to the building that this elevator was in, and took a trip up and down on that elevator to satisfy myself that it was in first-class running condition. The elevator moved just the same as it ordinarily did. There was no unusual jerkage in the elevator that I remember; if there had been any I would remember it. It operated all right. I got on the elevator and operated it from the ground floor to the top floor and return. There was no air accumulated in the hydraulic cylinder at that time that I could observe. The way that I always had of determining whether a cylinder had air in it or not, was to stop it as near a floor or landing as possible, and let it remain there, and see if it would vibrate from that place. I have always found in my experience that by stopping an elevator that has any air in the cylinder, it will vibrate more or less and leave that position.

MR. BRADY: Could there have been any air in there thirty minutes before that, and it operated as you say it did? A. No, I think not; but it could have been relieved in the meantime.

Q. How could you get at it to relieve it? A. Open the pet cock on the top of the cylinder. There is a ventilating cock on the top of the cylinder.

Q. Is this ventilating cock an automatic one, or is it one that an engineer or the person in charge of the machinery, operates? A. It is one that the engineer operates.

Q. Do you know whether or not that cock had been used in any way from the last time that you used it, up to

this time that you rode up on the elevator? A. I could not say positively. The principal cause for air accumulating in the cylinder is whenever there is any work being performed on that cylinder; for instance in packing the rods, shutting off the supply, poking out the stuffing-box connected with the rod, and replacing it by new packing, that admits air into the cylinder. Ordinarily, when the condition of the elevator is all right, and no work having been done on it, there is very little air accumulates. I can not positively say that there had been any work done within two or three days previous to the injury to this man.

### Cross-examination.

The cock that lets out the air from the cylinder is situated right on the head of the cylinder. The cylinder is between the second and third floors; it reaches a number of feet above the second floor. The cock is tapped right on to the top head of the cylinder; it is a piece of pipe tapped into the top head; there is a pet cock on the end of that pipe. I did not examine this cock at that time, after the accident. I could not state when, before this time, I had examined this cock or valve. I had no occasion to examine that from the fact that there had been no trouble reported from the elevator. It is only customary to examine that in case there was any trouble reported from the elevator. I don't remember exactly when this elevator was repacked; it was not two months, because the elevator required packing oftener than that. I think at that particular time we had to repack it every two weeks. I have said that after repacking, was the time that air would accumulate in the cylinder. I did not explain what the method was of removing the air. I don't know whether or not there was any air in the cylinder before the day of the accident. In cases of repacking, where the air has not been removed, the elevator would vibrate a little; not to any great extent. It would not jump from the floor if it was at a standstill and was stationary, and there was no air in the cylinder. All I did on that day to determine whether the elevator was in perfect condition, was to ride up and down on it and to bring it to a standstill at the landing of the floors in the building.

### Re-direct Examination.

The custom in removing that air from the cylinder after any work having been done on it, is to open this pet cock

after the work is done and then turn on the water, and the water pressure drives the air out of this pet cock, in that way relieving the cylinder from the air.   That cock is left open to the air and the pressure of the water upward drives the air out and it is allowed to remain open until the water comes up to it and then it is shut off.   I could not say positively that I was the first one to use the elevator after the accident.   I could not say positively where I found the elevator when I got to the building; it might have been on the same floor or another.   I simply took the elevator from the first floor and went to the top floor and came down again."

Lewis, the superintendent of the defendant corporation, testified in its behalf, upon this subject, as follows:

" On the day that plaintiff was injured I rode on this elevator; it worked normal.   I didn't notice at that time or any other time any bounding, jumping, jerking or upward movement of the elevator.   I probably rode five or six times on the elevator on the day of the accident.   After the accident, about 6 o'clock, I made a trip on the elevator.   It worked normal.   I didn't notice any bounding, jumping or jerking.   I had never been notified by an employe of the defendant or any one else for six weeks previous to the injury, that there was any bounding, jumping or jerking of the elevator."

Scully, an employe of defendant, testifying upon this subject said:

" I might have ridden on the elevator ten or twenty times that day.   I rode on it every working day and had done so for a week or two previous.   The elevator moved up and down in response to the cables, as it should, in the usual way.   I did not notice any jumping, bounding, jerking or sudden upward movement."

Two other employes of defendant testified about the condition of the elevator.   One of them said he rode upon it about two o'clock in the afternoon of the day of the accident, and found it all right.   The other one said he used the elevator about fifteen minutes after the accident, and it then moved all right.

From such evidence, taking also into consideration other evidence, tending *pro* and *con* to establish that the plaintiff was intoxicated when he attempted to handle and get

aboard the elevator, and that the elevator did not stop at the fifth floor, where he stood and was working it, but continued to ascend past that floor, and that plaintiff did not get aboard it at all, but missed his step, and so was precipitated down the shaft, and considering also the evidence tending to impeach the credibility of one, or more, of defendant's witnesses, we might, if we were acting as a jury, conclude that the preponderance and weight of the evidence was with the defendant, or we might not. But that is not the question we are bound to consider at this time. It is only whether there was, or not, evidence fairly tending to sustain the issues in behalf of the plaintiff, the weight whereof ought to be submitted to the jury. If there was, then the trial court should have refused to instruct the jury to find for the defendant. The latest rulings on that point are all we need refer to. L. E. & W. R. R. Co. v. Morrissey, 177 Ill. 376; McGregor v. Reid, 178 Ill. 464.

This last cited case (McGregor v. Reid) was one in which this court, affirming the action of the court below in directing a verdict of not guilty (76 Ill. App. 610), was reversed, and has numerous features similar to those now before us. There, the Supreme Court holds that if it be true that there was no evidence upon which the jury, acting reasonably within the rules of law, could base a verdict against the owners of the elevator there in question, and which would have been sufficient in law to support such a verdict if it had been found, the instruction to find for the defendant was properly given, but otherwise not. And the court, reiterating what it has often before held, said :

" All that the evidence tends to prove, and all just inferences to be drawn from it in appellant's (plaintiff's) favor, must be conceded to him." * * * " Under the rule, the evidence most favorable to appellee must be taken as true."

And the testimony, though of but one witness, strongly combated upon the ground that it had been refuted and overcome by other evidence in the case, could neither be denied nor ignored by the court in passing upon the instruction; and added that the jury might have believed that witness, and

found, from his testimony, that the elevator was not in good working order, etc. And, continuing, said :

" The credibility of the witnesses, the weight of the testimony, the drawing of the inferences from the facts proved, were all questions of fact for the jury to pass upon, and not for the court to decide."

The opinion in the McGregor case deals with several other questions in this record, and, not being yet reported, may properly be quoted from at considerable length as more authoritative and instructive than anything we could say, as follows :

" Thus, it appeared that the safety device was out of order from the fact (in connection with the testimony of Jallinger) that the elevator fell. It was a question for the jury whether or not the appellee knew this, or whether or not it had been in this defective condition long enough for the appellee, by the use of ordinary care and diligence, to have discovered it, and it was not for the court to say, as a matter of law, that an inspection twice a year by city officers, and four times a year by an agent of the indemnity company, was sufficient to discharge appellee from all responsibility for its defective condition. These were evidentiary facts, which should have been submitted, with all other evidence bearing upon the questions at issue, to the jury.

It might be that appellee was satisfied if the indemnity company was satisfied; but this would not change its relation to its employes, nor its duty to provide them with ordinarily safe places, appliances and means, in, by and with which to perform the tasks which had been allotted to them, in their employment. The duty was commensurate with the dangers incident to the service, and if it required a high degree of care, by making frequent examinations and applying frequent tests, to keep the 'dogs' or safety device attached to the elevator in working order and in a safe condition, so as to make the use of the elevator reasonably safe, it was the duty of the appellee to make such examinations and apply such tests. Nor would the assumption by appellant of such dangers as were incident to his service relieve appellee from its duties in the respects mentioned. He did not have charge of the elevator, nor, as appears from the evidence in the record, was it any part of his duty to give it any care or attention. Nor does it appear that he had any knowledge of the dangers attending its use, or of the appliance attached to keep it from falling. At

all events, whatever might have been the verdict of the jury, had the case been submitted, we are satisfied the court erred in directing a verdict, and that the Appellate Court erred in affirming the judgment."

A slight paraphrasing would make the language quoted as applicable to the facts of this case as to that one.

Now, applying this reasoning and authority to the facts we have quoted, we can not hesitate in holding that the question of whether the defendant was negligent in respect of the accumulation of air in the cylinder, was one that ought to have been submitted to the jury, and that the trial court erred in taking it away from them.

The judgment is reversed and the cause remanded.