THE KANSAS CITY, FORT SCOTT & GULF RAILROAD
COMPANY v. THOMAS B. KIER.

1. RAILROAD COMPANY — *Liability for Negligence of Employé.* A railroad company is liable to any one of its employés operating its road for the negligence of either one of its officers or employés, whose duty it is to keep the road in a reasonably safe condition, and who culpably fails to perform such duty, or to give notice or warning thereof.

2. FACTS STATED — *No Contributory Negligence — Plaintiff Entitled to Recover.* It was the duty of the plaintiff, a brakeman, when his train was backing out of the station, to take a position on the platform of the car nearest the main line, and when he neared the switch, to step off and adjust the switch and connect the main line. While performing this duty, he received injuries in the following manner: The ground on the west side of the switch on the morning of the injury was level and hard, and had been in that condition for a long time; he passed the station going east at 8:21 in the morning, and returned to the station after dark at 6:37 in the evening; after his trip down on the road and a short time before his return, the railroad company caused several car-loads of cinders to be unloaded in and about the switch for ballast; they were thrown up in heaps and piles on either side of the track, and not properly smoothed down, and were so thrown that the ground upon either side of the track was raised to the height of several inches, and left soft and spongy. According to his usual practice, the plaintiff, without any notice or knowledge of the changed and unsafe condition of the track, or road-bed, stepped from the moving train for the purpose of turning the switch, when his feet struck the cinders in such a way as to cause him to lose his balance and be thrown under the train, thereby crushing and mangling his left foot to such an extent that amputation was necessary. *Held,* That in the absence of contributory negligence upon his part, the plaintiff was entitled to recover against the railroad company.

3. ESTABLISHED RULES, *When Deemed Modified.* Where a railroad company establishes rules concerning the duties of conductors and others in opening and adjusting switches along its road, and notifies the officers, conductors and other employés thereof, such rules must govern until abrogated or changed; but if a brakeman, under the directions of the conductor of his train and in the presence and with the knowledge of the division superintendent of the road, who has charge of its management and directs the employés of the company in the performance of their duties, opens and adjusts the switch for a long time in a different manner than prescribed by the established rules, such rules are deemed changed or modified as to the brakeman obeying the orders of his conductor, with the knowledge and sanction of the division superintendent.

4. CONTRIBUTORY NEGLIGENCE — *Question Properly Submitted to Jury.* Upon the testimony introduced in the case, the court did not err in submitting to the jury the question of the contributory negligence of the plaintiff; and as the jury, by the verdict, found upon this question in favor of the plaintiff, this court cannot, upon the evidence, which is greatly conflicting, as a matter of law declare that the plaintiff was guilty of contributory negligence that would defeat his right of recovery.

*Error from Montgomery District Court.*

ACTION to recover damages for personal injuries. Judgment for plaintiff *Kier* on April 2, 1887, for $7,000 damages, and $350.85 costs. The *Railroad Company* brings the case to this court. The opinion, filed February 9, 1889, contains a statement of the material facts.

*Wallace Pratt, Charles W. Blair,* and *Israel P. Dana,* for plaintiff in error.

*J. D. McCue,* and *M. C. Showalter,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On the 3d day of December, 1885, and for about two and one-half years prior thereto, Thomas B. Kier was a brakeman in the employ of the Kansas City, Fort Scott & Gulf Railroad Company on its regular passenger train running between Cherryvale, in Montgomery county, and Arcadia, in Crawford county; the train made daily trips each way, leaving Cherryvale at 7:25 in the morning and return-

ing at 7:30 in the evening; in going to Arcadia it passed Parsons at 8:21 in the morning, and on its return reached Parsons at 6:37 in the evening; the Parsons station was not on the main line, but was reached by passing over a switch or spur track. The usual way of passing from the main line to the station was as follows: When the train was going east, the spur track was connected with the main track, and the train was run backward over the spur to the station; when going west, the same connection was made, and the train was run forward to the station and then run backward to the main line, when the switch was set in connection with the main line. It was the practice of Kier, and he alleged that it was his duty, when the train was backing out of Parsons, to take a position on the rear end of the train, and when the proper point was reached near the switch, to step to the side of the car and adjust the switch to connect the main line.

At the time of receiving the injury complained of, he had just stepped from the car for the purpose of turning the switch; he was thrown under the moving train of cars in such a position that the cars passed over his left foot, crushing and mangling the same to such an extent that it had to be amputated, in order to save his life. This action was brought to recover damages of the company for the injury so received. The grounds upon which the plaintiff seeks to charge his injury to the negligence of the company, are set forth in the petition as follows:

"That on the morning of the 3d day of December, 1885, and for a long time prior thereto, the ground where the switch was located was solid and hard, and had been in such condition; that the service required of him in the moving and adjustment of the switch could be done in the manner stated without injury to his person; that he was well acquainted with the condition of the locality and the condition of the track and ground around the switch; that on the morning of the 3d day of December, the passenger train on which he was employed as brakeman left the city of Cherryvale on its regular schedule time for its trip to Arcadia and return to Cherryvale; that it passed through the city of Parsons, and at that time the ground in and about the switch was in its usual good and

safe condition, and he performed his required service in open-
ing the switch in his usual manner as brakeman; that after
the passenger train had left the city of Parsons, and before its
return on the evening of said day, the company had caused
to be deposited in and about the switch several car-loads of
cinders, which were by the gross carelessness and negligence
of the employés of the company deposited and left in great
heaps and piles upon either side of the track and in and about
the switch, so that the ground upon either side of the track
was raised to the height of fifteen inches, and so spongy and
soft that a person stepping from the car would sink into them
to a great depth, thereby rendering the ground in and about
the track in an uneven, soft, spongy, and dangerous condition;
that when the passenger train reached the city of Parsons on
its return trip to the city of Cherryvale on the 3d day of De-
cember, relying upon and believing the track to be in the same
condition as when he passed over the same a few hours before,
and without any information or knowledge of any change hav-
ing been made, or that any cinders had been unloaded and
deposited in and about the track and switch, or that the same,
by reason of the gross carelessness and negligence of the com-
pany and its employés, had been left in the dangerous condi-
tion they were in, he stepped from the train for the purpose
of turning the switch so that the train could and would pass
onto the main track; that in stepping from the car, he did
so in the usual and ordinary manner, exercising due care to
prevent injury; that when he stepped from the car for said
purpose, his feet sank into the cinders, which were soft and
spongy, and gave way under his feet, causing him to lose his
balance and throwing him under the moving train of cars of
the company."

Upon the trial, the evidence offered on the part of plaintiff
tended to establish the foregoing allegations.    It is contended
by the railroad company that the petition does not state facts
sufficient to constitute a cause of action, and therefore that
no negligence of the company was proven at the trial.    In
support of this contention, it is said that the company owes
to the public the duty of affording adequate instrumentalities
for the transaction of its business and to make transportation
safe; therefore that it had the right to haul its ballast and
put the same on the track just as it was done in this instance;

that the company was not required to notify the plaintiff it was re-ballasting or repairing its road; that it was his duty to be on the constant lookout for ballast, or repairs on the track, either by eyesight or inquiry; that it was his duty to notice the condition of the track, which was open to observation, and if he failed to do so, it was such neglect, not only of his duty, but also of ordinary precaution for his safety, as to bar recovery for any damages thereby.   This court has already decided that—

"The law does not require that a railroad company shall, as between it and its employés, guarantee the sufficiency, good order and good condition of its tracks and roadway, but merely requires that the railroad company shall exercise reasonable and ordinary care and diligence to keep its tracks and roadway in a reasonably safe condition." (*Rly. Co. v. Weaver,* 35 Kas. 412; see also *Rld. Co. v. Ledbetter,* 34 id. 331; *Rld. Co. v. Wagner,* 33 id. 660.)

This court, however, decided in *Rld. Co. v. Holt,* 29 Kas. 152, that—

"The rule is, even under the common law, that a master employing servants upon any work, particularly a dangerous work, must use due and reasonable diligence that he does not induce them to work under the notion that they are working with proper and safe machinery, while employing defective and dangerous machinery; and if an employé is injured on that account, and without fault of his own, the master is liable in damages."

And in *Rld. Co. v. Moore,* 29 Kas. 633, it is said :

"In all cases, at common law, a master assumes the duty toward his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work.   .   .   .   And at common law, whenever the master delegates to an officer, servant, agent, or employé, high or low, the performance of any duty which really devolves upon the master himself, then such officer, servant, agent or employé stands in the place of the master and becomes a substitute for the master, a vice-principal, and the master is liable for his acts or his negligence."

In *Rld. Co. v. Moore,* 31 Kas. 197, the law is declared that —

"At common law, a railroad company is liable to a brake-

1. Railroad company; liability for negligence of road master. man for injuries caused by the negligence of the road master or foreman, whose duty it was, over a portion of the road, to direct repairs and keep it in a reasonably safe condition." (See also *Rld. Co. v. Fox*, 31 Kas. 586.)

Therefore, under the decisions of this court, if the road-bed or yard in and around the switch at Parsons had been changed by the dumping of cinders in heaps or piles after the train had passed through that place on the morning of December 3, going east, and prior to its return in the evening, and the dumping of the cinders left the road-bed or yard in a dangerous condition, then, if it was the duty of Kier, as alleged in his petition, to step from the car while it was moving slowly, for

2. Plaintiff entitled to recover, if not guilty of contributory negligence. the purpose of turning the switch, and, without having any notice of the recent change in the condition of the road-bed or yard, he stepped from the car in his usual and ordinary manner, exercising proper care, and was thrown under the train on account of the dangerous condition of the road-bed or yard in and about the switch, the railroad company would be liable. With this view, the petition states facts sufficient to constitute a cause of action. (*Hall v. Rly. Co.*, 74 Mo. 298; *Hullehan v. Rld. Co.*, 32 N. W. Rep. 529; *Kane v. Rly. Co.*, [U. S. C.] 9 S. C. Rep. 16.)

Counsel contend that if the plaintiff was entitled to be notified of the changed condition of the road-bed or yard, then every other employé would be equally entitled to like notice; and therefore that the company would be seriously embarrassed in the operation of its road. As we have already decided that a railroad company is liable to any one of its servants operating its road for the negligence of either one of its servants whose duty it is to keep the road in a reasonably safe condition, and who culpably fails to perform such duty or to give proper warning, we deem it unnecessary in this case to give further or additional reasons for the support of the law as declared by this court. It would seem to us, however, not very difficult or expensive, if a bridge, track, road-bed or yard of a railroad company is in a dangerous condition,

for the foreman having charge of the section or work, to place thereon at night, danger-signals, like red lights, so as to give warning to all the servants or employés of the company.

*Hathaway v. Rld. Co.*, 29 Fed. Rep. 489, is cited as decisive against any recovery by the plaintiff. That case was tried in the United States circuit court for the southern district of Georgia, and the opinion was delivered by Speer, J. In many respects the facts in that case are similar to this. In that case the plaintiff was a flagman, and the material deposited upon the track was sand, instead of cinders. That case was taken from the jury on the ground that the facts showed no negligence on the part of the railroad company. If the decision was based upon the theory that there was no evidence tending to show "that the sand was unnecessarily placed at the spot where the flagman was injured, and unnecessarily kept there," the case might be distinguished from this; but if the decision in that case goes to the full extent claimed for it, that in attempting to repair, or in repairing its track or road-bed, a company may place the same, while making its repairs, in a dangerous condition, and require its employés to perform duties at night on such a track or road-bed without any warning or notice of its changed and unsafe condition, we are not inclined to follow it.

The various decisions concerning ice and snow upon the track or road-bed are not contrary to the views expressed by us in this and former decisions, because employés might be required, under some circumstances, to take notice of ice and snow from the operation of natural causes upon the ground or work where they are employed. Such risks and hazards, according to some of the decisions, are incident to their employment.

It is further contended that Kier was out of his place at the switch — was voluntarily performing a duty not his; therefore that he is barred from recovery by his contributory negligence. The rules of the company introduced in evidence are as follows:

"14. Every conductor must personally open and close

switches used by his train or engine, and will be held responsible for the proper adjustment of the switches. When there is more than one train to use a switch, conductors must not leave the switch open for the following train, even when in sight, unless the conductor of the following train is at the switch and takes charge of it."

"19. Station agents are held responsible for the safety of switches, which must always (except when a man is standing by) be kept locked and right for trains running on the main track. (This is not intended to relieve conductors and others from care of switches they may use; whoever throws a switch upon a side-track must see it back on the main line.)"

The conductor of the train testified that he regarded the opening of the switch as the duty of Kier. Kier also testified that it was his duty to turn the switch; that he performed this duty during his entire service as brakeman on the passenger train; that he did this under the direction of the conductor; and that he had often performed this duty in the same way in the presence of the division superintendent. The conductor testified that he was under the immediate direction and supervision of the division superintendent; that this superintendent directed the employés on the train in the performance of their duty; that the division superintendent was his superior, and that he obeyed his orders in the operation of the road; therefore, notice to the division superintendent was notice to the company; and when Kier, under the direction of the conductor, opened and adjusted the switch during all the time he was brakeman, in the manner he did, without any complaint or objection on the part of the division superintendent, who saw him perform his work, we do not think it can be said, as a matter of law, that Kier was out of his place at the time of receiving his injury.

3. Established rules, when deemed modified.

We think upon the testimony that the court did not err in instructing the jury as follows:

"I may say to you, relative to these rules and regulations, they may be modified at the will of the defendant in this action by those having authority to do so, verbally or otherwise, and in charge and control of its business; and if you find or have the right to infer from the evidence which has been

offered on the trial of this cause, any of its rules have been so modified by this defendant, by those having authority to do so, then such modification, whether in one form or the other, is to be accepted by you; but if there has been no modification, you would not be justified in so finding."

It is also contended that the evidence shows that Kier fell over the switch block by his own carelessness, and that the cinders dumped upon the road-bed or yard had nothing whatever to do with his injury. The evidence in the case is greatly conflicting, but as the jury credited Kier and his witnesses, and as the trial court approved the verdict, we cannot disregard this evidence and say that Kier brought his misfortunes on himself by his own recklessness. Whether the defendant was guilty of negligence causing and contributing to his injury, was one of the leading issues in the case.

4. Contributory negligence—question properly submitted to jury.

Upon the evidence and instructions the jury found in favor of Kier; and although there was ample evidence to justify a different verdict, the facts have been determined by the jury adversely to the company; and as there was sufficient testimony before the jury to support the allegations of the petition and the verdict, we cannot interfere.

The evidence of E. O. Brown as to the safety of a person stepping from a moving train going six or seven miles an hour, even if erroneously received, is not sufficient for a reversal. He was only permitted to give his opinion in answer to one question. The testimony of Kier that he had daily stepped off the moving train to set and adjust the switch while in the service of the company as brakeman, was more conclusive than any mere opinion.

Finally, it is contended that the trial court committed error in instructing the jury upon the law of exemplary, or punitive damages. The verdict was for $7,000; Kier at the time of his injury was thirty-nine years of age; for twelve years he had been engaged in railroading, and intended it as his business in life; as brakeman and car-cleaner he was earning $85 per month, and was in good physical health; therefore, consid-

ering the injury that he received, the amputation of his foot, the diseased condition of his leg at the time of the trial, and his inability to move around except upon crutches, the verdict was not excessive. The instruction complained of is subject to criticism. Courts, in such cases as this, should not instruct concerning gross negligence, unless the same amounts to wantonness, (*Rly. Co. v. Rice,* 38 Kas. 398; *Rld. Co. v. Gants,* 38 id. 608; *Rly. Co. v. Whipple,* 39 id. 531,) and should not instruct upon gross negligence, even if amounting to wantonness, unless there is sufficient evidence before the jury to render it necessary. (*Rly. Co. v. Peavey,* 29 Kas. 169.)

In this case the evidence as to gross negligence, if any, is very slight; but in view of the damages awarded, we do not think the instruction sufficiently material to reverse the judgment.

In the case of *Rly. Co. v. Peavey,* supra, we held a similar instruction misleading, where it was apparent from the evidence that the engineer was not guilty of such gross negligence as implied willful injury. In that case the damages awarded were excessive, $6,500 being allowed for the loss of a thumb and first finger. The reversal was not solely upon the ground of the misleading instruction on gross negligence, but for other manifest errors, and also for excessive damages.

Other points are presented in the briefs, which we have fully considered, but did not think it necessary to consume time to discuss.

Upon the whole record, we cannot say that any error was committed by the trial court so prejudicial to the railroad company as to justify a new trial.

All the Justices concurring.