The Lake Erie and Western Railroad Company

*v.*

Michael M. Morrissey

*Opinion filed December 21, 1898.*

1. TRIAL—*when court must refuse to direct verdict for defendant.* The trial court must refuse an instruction to find for the defendant if there is evidence fairly tending to sustain the issues in behalf of the plaintiff.

2. RAILROADS—*tracks within switching limits must be ballasted in a reasonably safe manner.* Railroad tracks within switching limits must be so ballasted as to render them reasonably safe for the use of employees in performing their duties.

3. SAME—*employee may presume that switch tracks are reasonably safe.* In the absence of knowledge to the contrary, an employee of a railroad company may presume that tracks within switching limits at way stations are so ballasted as to make them reasonably safe for the performance of his duty in coupling cars thereon.

4. SAME—*when fact that condition of track is open and visible does not charge employee with notice.* The fact the condition of the ballast in a switch track is open and visible does not charge an employee totally unfamiliar with that part of the road with notice thereof, upon attempting to make a difficult coupling in the night time.

*L. E. & W. R. R. Co.* v. *Morrissey,* 75 Ill. App. 466, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. G. W. PATTON, Judge, presiding.

This was an action brought by Michael M. Morrissey in the circuit court of McLean county, against the Lake Erie and Western Railroad Company, to recover damages for a personal injury suffered by him while in the service of the company as a conductor of a freight train, and while attempting to couple, in the night time, two Empire Line cars at East Lynn, a small village on the line of the road.

The declaration contains but one count, and the material part is as follows: "And the plaintiff avers that it was

the duty of the defendant to keep and maintain that portion of its main tracks in the vicinity of said side-tracks as aforesaid, which it was necessary for the plaintiff to pass over in order to do switching and coupling and uncoupling of cars, in a safe and proper condition, so as not to expose the plaintiff or the servants of said company to any unnecessary danger or liability of accident, and it was then and there the duty of the defendant to have filled in the space between the ties, and underneath the same, of its said railroad track with cinders or other substance, to fill the same up level with the top of the ties to the bottom of the rail of the said defendant's track that was laid on said ties, so that the plaintiff and the servants of the said company whose duty it was to couple and uncouple the cars and do switching, in standing and walking on said track in order to couple its said cars, the plaintiff would not be exposed to unnecessary danger or liability to catch his foot underneath the rails of said ties or stumble or trip over the same. And plaintiff avers that the said defendant, not regarding its duty in that behalf, carelessly and negligently permitted that portion of its main track in the vicinity of the said switch and side-track at the village of East Lynn and in the switch yard there, to remain in unsafe repair and condition, and then and there carelessly and negligently permitted the same to be and remain out of repair, and negligently and carelessly permitted certain ties to remain above the surface of the ground, and negligently and carelessly permitted the north rail of the track of the said defendant's railroad on the main track, as aforesaid, to remain above the ground, and failed to have the ground between the ties and the bottom of the rail filled up so that plaintiff would not be exposed to danger or accident in attending to his duties as such conductor while in and about coupling and uncoupling cars passing along and over the said track, which he was obliged to do while attending to his duties in coupling and switching the said cars. And plain-

tiff avers that while standing and walking upon the said portion of the said main track, which he was obliged to do in order to make a coupling between the cars on the head end and the cars in the rear end of defendant's train in the line of his employment pursuant to his duty, not knowing the defective condition of the said track as aforesaid, in the night time, was then and there exposed to unnecessary danger and liability to accident, and then and there, while so engaged in making a coupling between the defendant's cars, as aforesaid, standing and walking upon the said portion of the main track, using due care and caution for his own personal safety in the line of his duty, his left foot became and was caught and fastened underneath the rail of the said defendant's track and against one of the ties of the same, and he then and there was unable to extricate the same, and the plaintiff was then and there thrown with great force and violence, and by the momentum of the cars he was so engaged in coupling, necessarily and unavoidably fell to and upon the north rail of said main track, and divers wheels of one of the defendant's cars which plaintiff was then and there engaged in coupling, then and there ran and passed over his left leg, whereby his left leg was crushed so that it became and was necessary to amputate the same above the knee," etc.

The defendant demurred to the declaration, which demurrer was overruled and a plea of general issue was filed. A trial was had before a jury, resulting in a judgment in favor of the plaintiff. The defendant appealed from the judgment of the circuit court to the Appellate Court for the Third District, where the judgment of the circuit court was affirmed, and appellant has appealed to this court and asks for the reversal of the judgment of the Appellate Court.

Tipton & Tipton, (John B. Cockrum, of counsel,) for appellant.

John E. Pollock, and FitzHenry & Pollock, for appellee.

Mr. Justice Craig delivered the opinion of the court:

Appellee, at the time of the injury, was thirty years of age, and was married. He had been railroading about twelve years, as brakeman, baggageman and conductor. He had worked on the Chicago and Alton road about eleven years. He commenced work for appellant on the sixth of April, 1897, as conductor of a gravel train, and he afterwards had a run between Rankin and Peoria. East Lynn is a regular station for receiving passengers and freight on the division east of Rankin. The night of August 14, 1897, when the accident occurred, appellee was sent east as conductor, in charge of the appellant's freight train, on the third or eastern division, and he had never made any trip prior to this one over this eastern division. He started from Tipton, Indiana, with a train of forty-three or forty-four cars, and when the train reached East Lynn, about one hundred miles west from Tipton, it was about 1:30 o'clock at night. It was necessary to do some switching at this station by putting off some cars. Two cars were shoved on the north or "business track," as it was called. Then they pushed two more on the main track, and shoved a couple more on the business track. Under the rules of the road it was appellee's duty to couple and uncouple cars. Four cars were cut off and run down on the main track and appellee set the brakes on them, when he noticed the other cars coming down the main track, pushed by the engine, and he went over and set the coupling-pin on the two cars then standing on the main track. It appears that the two Empire Line cars he was attempting to couple have a deck on the end, and on this are iron buffers. The draw-bar is below, and they are more difficult to couple than ordinary cars, and require the entire atten-

tion of the person making the coupling. When appellee undertook to make the coupling he had hold of the hand-hold with his right hand, and reached down and placed the link in the draw-bar. He then raised up and reached over to shove the pin down when the cars came together. The cars pushed the two cars that had been standing, about half a car length and appellee was compelled to walk along with them, and it was while going that distance that he was injured. He made two or three steps and the cars parted, and when they parted he tried to step out from the track. He stepped out with his right foot, but his left foot caught, the toe of his shoe going under the north rail of appellant's track, and he was unable to extricate it and was thrown down by the cars he was attempting to couple, and fell upon the north rail of the main track and his left leg was run over and was so injured that it was necessary to amputate it. It appears that it was appellee's first trip through East Lynn in charge of a train, and he knew nothing about the condition of the track, except what he might have learned in the short time he stood there coupling the cars.

One of the grounds urged by appellant for reversal is, that the court, at the close of the evidence and before the argument of counsel, refused to instruct the jury to find the issues for the defendant. Where there is evidence fairly tending to sustain the issues in behalf of the plaintiff, the weight to be given to the evidence must be submitted to the jury, and it is the duty of the court to refuse an instruction like the one asked. An examination of the evidence as to whether there was evidence tending to support the cause of action as set out in plaintiff's declaration, satisfies us that the trial court did not err in refusing to take the case from the jury.

Did the court err in giving instructions on the part of appellee? Only four instructions were asked or given on the part of appellee while thirty-six were given on the part of appellant.

Appellant argues that it is not liable if its road was ballasted as road-beds are usually ballasted which have adopted the system appellant adopted. The question made by the declaration was not whether the "crown" or "box" system of ballasting a railroad was the best, but whether, under the declaration, the appellant "carelessly and negligently permitted its main track in the vicinity of the switch and side-track to remain out of repair and in *unsafe condition*, and carelessly permitted certain *ties to remain above the surface of the ground*, and carelessly and negligently permitted the north track to remain above ground, and failed to have the ground between the ties and the bottom of the rail filled up so that plaintiff would not be exposed to danger of accident in attending to his duties as such conductor while in and about coupling and uncoupling cars passing upon and over said track," etc. The third instruction for the plaintiff told the jury that it was the duty of the defendant to have its track ballasted at the village of East Lynn, within switching limits, with cinders, gravel or other substance up level with the ties and level with the bottom of the rail, if ballasting to that extent was necessary to make such railroad track reasonably safe to employees in coupling cars, and that if they believed, from the evidence, that the track was not so ballasted at the point of the alleged injury, but, on the contrary, was ballasted so that the gravel was lower than the rail at said point, and that by reason of such gravel being lower than the rail the plaintiff, while exercising ordinary care for his own safety, caught his foot underneath the rail and was unable to extricate the same, and in consequence thereof was injured, then in such case they should find for the plaintiff and assess his damages at what they believed, from the evidence, he had sustained.

In *Illinois Central Railroad Co.* v. *Sanders*, 166 Ill. 270, which was a case involving the same principle, in effect, this court said (p. 278): "The law does not require a rail-

road company to furnish machinery, tracks and switches for their employees which are of the best character or that are absolutely safe, but the duty imposed is to use reasonable and ordinary care and diligence in providing safe machinery, tracks and switches for the use of those engaged in its service. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Lonergan,* 118 Ill. 41.) But this rule, as the evidence tends to show, was not observed. The evidence seems to show that, as a general rule, railroad companies at stations within switching limits have their tracks filled up to the level of the ties, so that brakemen may walk over the ties in coupling cars without stumbling or falling. If this precaution had been observed it is apparent appellee's foot, in attempting to couple the cars in question, would not have been caught under the ties, and he would not have stepped into the cattle-guard and received the injury."

What was said in the *Sanders case* is applicable here. The evidence in this case shows that many of the railroads,—the Chicago and Alton, the Chicago and Northwestern, the Chicago, Burlington and Quincy, and several other roads,— on the main track, in the switch yards and at terminals, grade up their tracks even with the top of the ties to make them safe for brakemen coupling and uncoupling cars. The law requires a railroad company to exercise reasonable and ordinary care and diligence in furnishing safe tracks for its employees. If it is necessary for the safety of its employees in the larger towns and terminals, it is equally necessary in the smaller places where switching is necessary to be done. Moreover, the principle announced in appellee's third instruction is recognized in appellant's seventeenth instruction, which reads as follows:

"The court instructs the jury that the law does not require railroad companies to ballast their roads, within switch yards or elsewhere, with cinders or other substance to and on a level with the bottom of the rail,

*unless the same is necessary to make the same reasonably safe.* If the jury believe, from the evidence, that the road-bed and track at the point in question was reasonably safe for the employees in the management of defendant's trains, the jury will find the defendant not guilty."

This instruction, while it asserts that the law does not require railroad companies to ballast their roads, within switch yards or elsewhere, with cinders or other substance to and on a level with the bottom of the rail, admits it is required *if necessary to make the same reasonably safe,* which is in harmony with appellee's third instruction. The law required the railroad company to furnish a reasonably safe track inside the switching limits, where switching was required to be done, and the plaintiff, in the absence of knowledge to the contrary, as we said in the *Sanders case, supra,* had the right to presume that the railroad company had discharged its duty in this regard. The evidence shows that the plaintiff was not familiar with the road at the place where the injury occurred, having never been over this eastern division prior to this trip, and that he did not know anything about the condition of the track before that; that it was in the night time, and he was not standing there more than a minuté before the cars were pushed up by the engine to be coupled. These instructions, both on the part of appellant and appellee, are in substance to the same effect, and agree as to the law, and are in accord with the views of this court as expressed in *Illinois Central Railroad Co.* v. *Sanders, supra,* and therefore could not have misled the jury to the prejudice of appellant. *Chicago and Eastern Illinois Railroad Co.* v. *Hines,* 132 Ill. 161.

Appellant insists the court erred in modifying appellant's twenty-sixth instruction by inserting the words "and known to plaintiff." The instruction is as follows:

"The court instructs the jury, that if they believe, from the evidence, that the plaintiff was an employee of the defendant, and as such was conductor of and in charge

of the train in question, and if you further believe, from the evidence, the defendant's road-bed and track at the point in question, as constructed, was reasonably safe for its employees engaged in the movement of the defendant's trains and the operation of its road, and that the condition of the road at the place of injury was open and visible *and known to plaintiff*, then the law is that the plaintiff assumed the ordinary risks incident to such employment, and that the injury incident to the coupling of cars was one of the risks assumed by the plaintiff under that employment, and for which he cannot recover."

The modification was proper under the evidence in the case. Appellee testified this was his first trip over this division; that he knew nothing about the condition of the track where the injury occurred; that it was in the night time, and he had no opportunity to see it except the moment he was attempting to couple the cars, and there is nothing in the record contradicting appellee. In *Chicago and Eastern Illinois Railroad Co.* v. *Hines, supra,* this court said (p. 169): "The burden of furnishing safe machinery, appliances, surroundings, etc., is upon the master, and while the master is not to be held liable for defects and dangers of which the servant is fully informed, yet the servant is authorized to rely upon the acts of the master in that respect, and is under no primary obligation to investigate and test the fitness and safety of the machinery, surroundings, etc., in the absence of notice that there is something wrong in that respect. (Shearman & Redfield on Negligence,—2d ed.— sec. 95; Bishop on Non-contract Law, sec. 678; *Porter* v. *Hannibal and St. Joseph Railroad Co.* 60 Mo. 16). And, necessarily, much more is the servant entitled to assume that his master has furnished him with suitable and safe materials, machinery and surroundings, and relieved him of investigation and inquiry in that regard, where, as in the present instance, the performance of his duties requires constancy of attention to other matters. A man

whose attention is constantly directed to moving cars, and their coupling and uncoupling, cannot possibly give much attention to the ties, switch-bars, etc., over which he may, from time to time, have to pass."

Appellant objects to the modification of its thirtieth and thirty-first instructions.    They are as follows:

30. "The court instructs the jury, that if they believe, from the evidence, that it is customary for well-managed railroad companies to ballast their tracks with gravel, making a crown in the center, sloping off each way to ward the rails, leaving an inch or an inch and a half of space under the rails for water to escape, *and that such method of ballasting is reasonably safe for employees*, and if the jury believe, from the evidence, that the defendant's road at the point in question was so ballasted, then the jury will find the defendant not guilty.

31. "The court instructs the jury, that if they believe, from the evidence, that defendant's road was ballasted with gravel at the point in question, crowned in the middle, sloping to the tracks, leaving an inch or an inch and a half of space under the rails for the water to escape, and that this mode of ballasting is in common use by well-managed railroads in this country, *and that such ballasting is reasonably safe for employees*, then the defendant is not liable."

Under the allegation in the declaration, as before shown, the modification "and that such method of ballasting is reasonably safe for employees," was proper, and not error. The modification of appellant's sixth, sixteenth, twentieth, twenty-first, twenty-third and twenty-fourth instructions was proper for the same reason, and it is unnecessary to refer to each one separately.

The instructions, taken together as a series, fully presented the law as applicable to the case under the pleadings, and perceiving no serious error the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*