MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. C. A. KEEFE.

Decided January 7, 1905.

**1.—Negligence—Railway Company—Leaving Clinkers in Yard.**

Where plaintiff, a brakeman, while coupling cars in the yards, stumbled over a clinker and was injured, and the evidence showed no inspection of that part of the track by the railway company, and the clinker was along the side of the track upon which, in coupling cars, the brakeman was expected to walk, the jury were justified in finding that the company was guilty of negligence in failing to perform the duty of inspection.

**2.—Contributory Negligence—Going Between Moving Cars.**

A brakeman was not guilty of contributory negligence, as matter of law, in going between slowly moving cars to uncouple them where, the automatic coupler having failed to work, it was customary for the uncoupling to be done in this way.

**3.—Master and Servant—Assumed Risk.**

The fact that a servant is injured because of the way of doing the work selected by him, when if he had selected another way the injury would have been avoided, does not, as a matter of law, render him guilty of contributory negligence, the true test being whether he exercised ordinary care in performing the work as he did.

**4.—Same—Assumed Risk—Charge.**

A charge, set out at length, held to fairly submit to the jury the defenses of assumed risk and contributory negligence in an action by a brakeman for injury received while uncoupling cars from a moving train.

**5.—Same—Fellow Servant—Common Law.**

A roadmaster whose duty it is to keep the railroad yard and track clear of clinkers is not, under the common law, a fellow servant with a brakeman whose duty it is to couple and uncouple cars in the yard.

Appeal from the District Court of Grayson. Tried below before Hon. J. M. Pearson.

*T. S. Miller* and *Smith & Beaty* for appellant.—1. Proof of the presence of a clinker in appellant's yards at McAlester, which caused appellee's injuries, with no circumstances tending to show knowledge on the part of any agent of appellant actual or constructive, is no proof of negligence. Railway Co. v. Brown, 54 S. W. Rep., 865; Railway Company v. Thompson, 33 S. W. Rep., 718; Railway v. Gaines, 46 Ark., 555; Lee v. Railway Co. (Ga.), 12 S. E. Rep., 307; Patton v. Railway Co., 179 U. S., 658; 1 Labatt's Mas. & Serv., sec. 126 and citations.

2. Appellee was guilty of negligence in going between the cars at the time of his injury, which contributed to his injury and precludes him from recovery. Railway Co. v. Smith, 38 S. W. Rep., 51; Morris v. Railway Co., 108 Fed. Rep., 747; Railway Co. v. Rice, 11 S. W. Rep., 699.

3. If there is a safe way and a more dangerous one in which the duty may be performed and the employe adopts the latter he assumes the risk in performing his duty in the way selected. Morris v. Railway, 108 Fed. Rep., 747.

4. Stumbling over a clinker in the railroad yards by an employe is a risk incident to the employment and assumed by the employe. Lee v. Railway, 86 Ga., 231; Williams v. Railway, 119 Mo., 316; Hughes v. Railway, 27 Minn., 137; Piquegno v. Railway, 52 Mich., 40; Railway v. Smith, 38 S. W. Rep., 51.

5. An employe injured while violating a rule promulgated for his safety is guilty of contributory negligence. Railway v. Rice, 11 S. W. Rep., 699; Railway v. Cane, 118 Fed. Rep., 223.

*Wolfe, Hare & Maxey,* for appellee.—1. The fact that the party was injured because of the way selected when if he had selected the other way the injury would have been avoided, alone, does not fix upon him contributory negligence. The result is not the true test. L. & N. R. R. Co. v. Orr, 91 Ala., 548, 8 So. Rep., 360; Tenn. Coal, etc., Co. v. Herndon, 100 Ala., 451, 14 So. Rep., 287.

2. It was the duty of appellant to use ordinary care to keep its roadbed and track over and about which appellee had to work, in reasonably safe condition, and he was not bound to inspect to see whether appellant had discharged this duty. He assumed no risk arising from appellant's failure to discharge its duty and the fact that he might, by inspection, have discovered the dangerous condition, would not preclude him from a recovery when the evidence shows that he did not see or know its condition. Fish v. I. C. R. Co., 65 N. W. Rep. (Ia.), 995; St. L. & Iron Mount. & So. Ry. Co. v. Robin, 21 S. W. Rep. (Ark.), 886; L. & N. Ry. Co. v. Ward, 18 U. S. App., 683; Sutherland v. N. Pac. Ry. Co., 43 Fed. Rep., 646; U. P. Ry. Co. v. Snyder, 152 U. S., 684; B. & O. Ry. Co. v. Baugh, 149 U. S., 386; N. Pac. Ry. Co. v. Herbert, 116 U. S., 642.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellee, C. A. Keefe, instituted this suit against appellant to recover damages for personal injuries alleged to have been received by him while he was in the employ of appellant as brakeman and engaged in breaking up a freight train at McAlester, Indian Territory. There was a trial and a verdict and judgment in favor of plaintiff, and defendant appealed. The facts appear in the opinion.

*Opinion.*—Appellee was brakeman on a local freight train operated between Krebs and McAlester in the Indian Territory. This train had returned from Krebs with a trainload of coal and coke. Part of the cars had been placed in the north yards of McAlester and those cars intended for the south yards were being placed therein, preparatory to their being taken out by trains on the main line. Two cuts had just been made of the train, one on track three, and one on track two, and a third cut of the train was to be made for the main line. The engine was headed south and was north of the lead switch with the train on the main line. The appellee was trying to cut off three cars for the main line, when he stepped on a large clinker and fell, causing his left arm to be caught between the draw heads and necessitating its amputation near the shoulder. It was about 6:05 o'clock in the evening.

Appellee testified that "the couplers were automatic couplers and

coupled when jammed together. These couplers come uncoupled when you use a lever. By pulling the lever you raise the pin, which allows the coupler to come apart. I attempted to uncouple these cars, pulling the lever, and it would not pull the pin from some cause. I then gave them the signal to back up a little and went in to pull the pin to the other drawhead. The cars were moving very slowly. The lever on this drawhead was on the other side from me. The levers are put on opposite corners of the cars. The south car had the lever on the side I was on, but that threw the lever of the other car on the other side. I signalled for them to give me a little slack by backing up, and went in to pull the pin and started to step out, intending to give them a signal to stop, but stumbled over a clinker. I do not know whether I gave them the signal or not. The cars came together and coupled me in there. It caught my left arm above the elbow. I was facing north on the east side of the track. I could not get out. I do not know why the pin did not come out when I attempted to work the lever. It is a common thing for the lock to fill up with dust on a coal run and the couplers fail to work when there is not anything wrong with them, and we have to clean them out. It is customary for the brakeman to step in and raise the pin when the coupler would not work. That was proper. It is a common thing and frequently done by brakeman in the employ of defendant. I had seen it done often."

McAlester was a place designated by the appellant for cleaning engines, that is, taking the cinders and clinkers out of the fire box, and cleaning out the ash pans. Men are provided there for that purpose, called fire knockers. Every few days the clinkers were loaded on cars and taken out on the main line for ballast. It was the roadmaster's duty to order it done. The yards were in charge of a roadmaster who was the head man for cleaning that part of the yard. He had section men under him, and if they failed in their duty it was the roadmaster's place to see it was done. The roadmaster's headquarters were at McAlester. When cinders were to be hauled away the roadmaster gave directions therefor through his foreman.

It is insisted that proof of the presence of clinkers in appellant's yards at McAlester which caused appellee's injuries, with no circumstances tending to show knowledge on the part of any agent of appellant, actual or constructive, is no proof of negligence. It was the duty of appellant to use ordinary care to furnish appellee a reasonably safe track and place to work. The evidence was sufficient to justify the jury in finding, as they did, that appellant was guilty of negligence in failing to perform this duty. No inspection of this part of the track was shown on the part of appellant. The clinker was along the east side of the track where, in attempting to uncouple the cars, appellee was expected to walk.

The appellee was not guilty of contributory negligence as a matter of law in going between the cars under the facts shown. He attempted to uncouple the cars by pulling the lever on the back of the coupler, but this would not pull the pin. He then gave the signal to back up and went in to pull the pin to the other drawhead. The cars were moving slowly. He then started out to give the signal to stop, when he stumbled

over a large clinker and was injured. It was shown that it was customary for a brakeman to step in and raise the pin when the coupler would not work and the train was moving slowly. It was also shown that the brakeman must watch the cars to keep from being struck and can not watch where he is stepping. The issue of contributory negligence on the part of appellee in going in between the cars while in motion was fairly submitted in the court's charge to the jury and the evidence supports their finding.

Again, it is contended that if there is a safe way and a more dangerous way in which the duty may be performed, and the employe adopts the latter, he assumes the risk in performing his duty in the way selected. We do not agree with this contention. There was evidence that coal and dirt getting in the coupler might prevent the lever from working, in which event it was the custom, if the cars were moving slowly, for the brakeman to go in between the cars and pull the pin with his hand. The question is, did the appellee exercise ordinary care in going in between the cars to pull the pin while the cars were slowly moving? The verdict embraces a finding in the affirmative, and the evidence is sufficient to support this finding. If there was evidence to satisfy the jury that appellee selected a dangerous way to pull the pin, knowing that the way selected was dangerous, when there was a safe way apparent to him, he would be guilty of contributory negligence. The fact that the plaintiff was injured because of the way selected, when if he had selected the other way the injury would have been avoided, does not, as a matter of law, fix upon appellee contributory negligence. Railway Co. v. Orr, 91 Ala., 548, 8 So. Rep., 360; Coal Co. v. Herndon, 100 Ala., 451, 14 So. Rep., 287.

The evidence was not of such a conclusive character on the question of appellee's knowledge of the condition of the yards as would justify the court in concluding that he assumed the risk of injury while working therein. Appellee did not assume the risk arising from appellant's failure to use ordinary care to provide a reasonably safe track, and place in which he was to work, unless he knew of such failure, or in the discharge of his duties must necessarily have acquired knowledge thereof.

The several defenses relied upon by appellant were fairly submitted to the jury in the fifth paragraph of the court's charge, wherein the court instructed the jury as follows: "On the other hand if you find and believe from the evidence that the place at which plaintiff was at work at the time he was injured was a reasonably safe place for him to discharge his duties, or if you find from the evidence that stumbling over a clinker was not the proximate cause of plaintiff's injury, or if you believe that defendant did not know of the presence of said clinker, and by the exercise of ordinary care would not have known of it, or if you believe from the evidence that plaintiff's injuries were caused, not by defendant's negligence, but by one of the risks ordinarily incident to the work in which he was engaged, or if you believe from the evidence that a clinker caused plaintiff to stumble and thereby get injured, but yet you believe that the presence of said clinker at the time and place he was injured was so patent and open to observation that an ordinarily prudent person performing the duties plaintiff was then discharging

would, in the exercise of ordinary care for his own safety, have discovered and avoided the danger, if any there was, or if you believe from the evidence that plaintiff knew of the presence of such clinker, or if you believe from the evidence that plaintiff knew of a custom or rule of cleaning engines at said place whereby he should have reasonably suspected the presence of such clinker, if any there was at said place, or if you believe from the evidence that plaintiff's injuries were the result of an accident, by which is meant that neither plaintiff nor defendant has been shown by the evidence to have been guilty of negligence which was the proximate cause of said injury, or if you believe under all the facts and circumstances of the case that plaintiff went between the cars while they were moving, and you further believe from the evidence that he went for the purpose of coupling said cars, and you further believe from the evidence that this was after he had noticed that the coupling appliances were not in good order, and if you further believe from the evidence that there was a rule of the company which said: 'Great care must be used in coupling and uncoupling cars. Do not go between the cars unless they are moving at a slow and safe speed, nor attempt to make any coupling unless the drawbars and other coupling appliances are known to be in good order,' and if you further believe that his going between the cars was to make a coupling, if he did, and that his going for that purpose under the circumstances was in violation of the rule of the company and was the proximate cause of plaintiff's injuries, then said act of his in violating said rule, if he did, would be one of the assumed risks for which he could not recover; or, if you find from and believe from the evidence that plaintiff's injuries were caused by a failure on his part to exercise such ordinary care for his own safety as a person of ordinary prudence engaged in the same service would have exercised, then upon your finding any one or more of the events mentioned in the several subdivisions of this clause of the charge, you will return a verdict for the defendant."

It is insisted that the court erred in instructing the jury as follows: "And if you further find and believe from the evidence that defendant's permitting said clinker to be and remain on its said premises at such time and place, if you find it did permit the same, was an act of negligence, and if you further find and believe from the evidence that such negligence, if any there was, proximately caused plaintiff's injuries, then you will find for the plaintiff, unless you find for the defendant under other instructions hereinafter given you." It is contended that there is no evidence to authorize the giving of this charge. It is argued that the word "permit," used in this charge, imports knowledge, and that there was no evidence that appellant had knowledge that the clinker which caused the injury was in its yards. When the charge is construed as a whole, the jury could not have been misled by the use of the word, "permit." The evidence fairly raised the issue embraced in the charge, and the court did not err in submitting the same.

Charge No. 2, requested by the appellant was fairly embraced in paragraph five of the court's charge. The evidence fails to show that the danger of stepping on a clinker was so open and obvious to appellee that he assumed the risk of injury therefrom.

Complaint is made of the action of the court in refusing the following charge requested by appellant: "You are instructed that plaintiff can not recover of defendant on account of any injury caused by the acts of one or more of his fellow-servants, and you are further instructed that acts of the defendant's firemen and fire knockers in throwing and leaving the clinkers and cinders taken from its engines in the yards or near its track where plaintiff was required to perform his duties, would be the acts of plaintiff's fellow-servants within the meaning of this and the general charge for which he can not recover."

The proposition submitted is that "the firemen of appellant and the fire knockers, who put the clinkers in its yards at McAlester, and its section hands and yardmaster there, whose duty it was to remove them, were fellow-servants of appellee, and appellant is not responsible for their negligence, if any."

The appellee resides in the Indian Territory, where the accident occurred. The common law is in force in the Indian Territory and determines the rights of the parties. The evidence discloses that the company had delegated to its roadmaster, Brant, the control of its south yards and the duty of keeping that part where appellee was injured, clear of cinders. He was superintendent over a section of about one hundred miles of the road. The section men were under him. It was the roadmaster's duty to see that the section man removed the cinders. Appellant's duty to use ordinary care to provide a reasonably safe track and place for appellee to work having been delegated to its roadmaster, he, in the discharge of such duty, was not a fellow-servant of appellee. This fact did not relieve the company of its duty to use ordinary care to provide a reasonably safe track and yard for plaintiff to work.

The assignments not discussed have been carefully considered and are not sustained. Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.