[No. 10945. Department Two. September 10, 1913.]

CASSIE HANSON *et al., Respondents,* v. COLUMBIA & PUGET SOUND RAILROAD COMPANY, *Appellant.*[1]

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISKS —INCOMPETENT FELLOW SERVANT—PLEADING. A complaint for the wrongful death of a switchman, thrown from the train by a sudden jerk through the incompetency of the engineer, does not show assumption of risks, or injury by the negligence of a fellow servant, where it alleges that the defendant knew and the deceased did not know of the engineer's incompetency and that the sudden jerk causing the accident was by reason of his inexperience and incompetency.

SAME—EVIDENCE—ADMISSIBILITY. In an action for the death of a switchman thrown from the train by a sudden jerk, it is not error to admit in evidence a plate illustrating hand holds and grab irons upon cars according to Federal standards, although the action was not brought under the Federal liability act, where the jury were instructed that it was admitted only to illustrate oral testimony.

SAME—INCOMPETENT FELLOW SERVANTS — NOTICE — QUESTION FOR JURY. Whether a railroad company received a letter complaining of the incompetency of an engineer, is for the jury where the company's switch foreman testified as to the contents of the letter, which he placed upon a desk, the usual place for such complaints, the company having failed to produce the letter upon demand.

EVIDENCE—LETTERS—CONTENTS. Where the defendant, on demand, failed to produce a letter written to it, evidence of the contents of the letter is admissible.

WITNESSES—EXAMINATION—HOSTILE WITNESS. The examination of a hostile witness in the employ of the adverse party is largely within the discretion of the trial court.

MASTER AND SERVANT—INJURY TO SERVANT—SAFE PLACE TO WORK —OBSTRUCTIONS NEAR TRACKS. It is negligence to maintain switch yard tracks in such close proximity to a pile of timbers on one side

[1]Reported in 134 Pac. 1058.

and the piling of an overhead bridge on the other side, as to render it dangerous for switchmen to ride on the side of the cars; and to maintain piles of slippery rocks or shale 2 to 3 feet high on either side of the track, and holes 8 to 10 inches deep between the ties; the failure to maintain switch yards in a reasonably level condition being actionable negligence.

SAME—SAFE APPLIANCES—QUESTION FOR JURY. In an action for the death of a switchman, thrown from the car by a sudden jerk, the negligence of the defendant in failing to furnish proper equipment is for the jury, where there were no ladders on either the sides or ends of the cars, as required in the usual equipment.

SAME—INCOMPETENT FELLOW SERVANTS — NOTICE — QUESTION FOR JURY. The negligence of a railroad company in employing an incompetent engineer to handle a heavy switch engine, is for the jury where it appears that a switchman was thrown down and killed by an unusual and unnecessary jerk, that the engineer had run an engine only 41 days, had handled the engine roughly on other occasions, and complaint of his recklessness had been made to the assistant superintendent.

SAME—ASSUMPTION OF RISKS—QUESTION FOR JURY. A switchman, thrown from a train by a sudden jerk through the negligence of an incompetent engineer, does not assume the risk where the evidence fails to show that he had knowledge of the incompetency of the engineer, or of the uneven condition of the roadbed where he fell, but for which he might have regained his footing and saved himself.

SAME—CONTRIBUTORY NEGLIGENCE. A switchman thrown from the car by a sudden jerk, is not guilty of contributory negligence, where he was expected to ride upon the car, and was sitting at the end in the only place provided, and a much smaller man sitting with him had difficulty in saving himself.

SAME—FELLOW SERVANTS—INCOMPETENT FELLOW SERVANTS. There is no question of fellow servant involved where the death of a switchman was caused by the negligence of an incompetent engineer, negligently employed and retained by the company after notice of his incompetency.

SAME—CONCURRING NEGLIGENCE OF FELLOW SERVANTS. The negligence of an incompetent engineer, in causing the death of a switchman, is no defense, where it merely concurred with the negligence of the defendant in failing to maintain its switch yards in a reasonably level condition.

DEATH—DAMAGES—EXCESSIVE VERDICT. A verdict for $15,000 damages for the death of a husband and father, a vigorous man 38 years of age, employed as a railway switchman, is not excessive.

Appeal from a judgment of the superior court for King county, Carey, J., entered August 13, 1912, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for the wrongful death of a switchman. Affirmed.

*Farrell, Kane & Stratton* and *Stanley J. Padden*, for appellant.

*Arthur E. Griffin*, for respondents.

ELLIS, J.—This is an action by the widow and minor children of Joseph Hanson, deceased, to recover damages for his wrongful death, which they claim was caused by the negligence of the defendant. The deceased was employed as a switchman in the defendant's yards at Seattle. At about 10:15 o'clock, on the night of August 30, 1911, a switching crew consisting of the engineer, fireman, the switch foreman, the deceased and another switchman, were engaged in transferring a string of twenty-five loaded coal cars from another track to the scale track for weighing. These cars were being pushed onto the scale track by a large powerful switch engine, which with the tender weighed about 207 tons. The deceased and the other switchman were sitting in an opening across the end of the front car, the car farthest from the engine, when the train was suddenly jerked throwing the deceased forward between the rails. He struck on his feet, fell forward on his hands and knees, and before he could recover himself was run over and killed.

The negligence charged was: (1) placing this powerful switch engine in charge of an incompetent, inexperienced, careless and negligent engineer, who by an unusual and unnecessary emergency application of the air brakes caused the car to jerk, killing the deceased; (2) failure to furnish a safe place to work, in that the roadbed was filled with slippery mine rocks of large and small sizes and was rough, uneven and dangerous; (3) failure to furnish a reasonably safe place, in that there was permitted to be and remain a

a pile of timbers so close to the west side of the scale track and certain bridge piling so close to the east side as to prevent the switchman from riding upon the sides of the cars; (4) failure to provide reasonably safe equipment, in that the car in question was not provided with any platform on the end or with sufficient or suitably placed grab irons, hand holds, or with ladders, either on the ends or sides. There were further allegations of knowledge and failure to warn the deceased of these things on the defendant's part, and lack of knowledge or notice on the part of the deceased. The answer denied generally the negligence charged, and set up, as affirmative defenses, contributory negligence, assumption of risk, and negligence of a fellow servant. These defenses were traversed by the reply. The trial resulted in a verdict of $15,000 for plaintiffs. At appropriate times, the defendant objected to the introduction of any evidence, moved for a nonsuit, for a directed verdict and for judgment notwithstanding the verdict. These motions were denied. From a judgment on the verdict, the defendant appealed.

The many assignments of error may be conveniently grouped and discussed under the following heads: (1) error in permitting the introduction of any evidence, under the allegations of the complaint and counsel's opening statement; (2) error in admitting certain evidence and in permitting certain questions claimed to have been prejudicially leading; (3) insufficiency of the evidence to sustain the verdict; (4) error in the giving of certain instructions; (5) error in that the verdict was excessive.

I. A careful reading of the complaint and of the opening statement of counsel for the respondents convinces us that the first charge of error is groundless. It is manifest that, if the allegations of negligence as charged in the complaint, and which we have condensed in our statement of the case, were true, they stated a cause of action. The opening statement of counsel was to the effect that he would prove these things. The contention that the complaint showed either

an assumption of risk on decedent's part, or injury by negligence of a fellow servant, is without merit. If, as alleged, the appellant knew, and the deceased did not know, of the engineer's incompetency, there was no assumption of risk; and if, as alleged, the engineer was inexperienced and incompetent and by reason thereof stopped the car with an unnecessary jerk, causing the accident, there was no question of fellow servant involved. It was the master's duty to employ a competent engineer. These things were sufficiently alleged. They were questions for the jury upon the evidence. 1 Labatt, Master & Servant, § 186.

II. The respondent was permitted to introduce in evidence a plate illustrating the distribution of hand holds, grab irons, ladders, and stirrups upon cars according to the standards prescribed by the interstate commerce commission. This was objected to on the ground that the action was not brought under the Federal Liability Act. The plate was admitted but, as stated by the court in the presence of the jury, only as illustrating oral testimony as to what were the usual and reasonably adequate safety appliances. There was no prejudicial error in its admission for this illustrative purpose.

The appellant's switch foreman was permitted, over appellant's objection, to testify as to the contents of a letter which he claimed to have written to the assistant superintendent complaining of the engineer's incompetency. He testified that he placed the letter on the desk of the assistant superintendent where it was customary to place such communications. Sufficient demand was made upon the appellant to produce the letter. It was not produced, the assistant superintendent claiming that he never received it. Whether he did receive it or not was a question for the jury. We find no error in the admission of evidence as to its contents.

It would unnecessarily lengthen this opinion to discuss in detail the questions permitted which it is claimed were prejudicially leading. They were propounded to a witness who

was at the time an employee of appellant, and who, as counsel for respondents stated, was hostile to the respondents. In such a case, great latitude is permissible, even to the extent of cross-examination by the party producing the witness. The matter is largely within the discretion of the trial judge. There was no abuse of the discretion in this instance.

III.   It is contended that the evidence was insufficient to sustain the verdict, in that it failed to establish the negligence charged. The evidence was conclusive that there was a pile of timbers close to the west of the track and that the track was maintained in close proximity to the piling of an overhead bridge on the east side. These obstructions were from two and one-half to three and one-half feet from the nearest rail of the track. Obviously, the overhang of the car would render riding on the side of the car dangerous in the extreme, even had there been any means for so riding. That such a condition in a switch yard injected an unnecessary element of danger into the place of work of the switchmen, is too plain to admit of argument.

There was also ample evidence that the roadbed, about seven days before the accident, had been filled with slippery rocks or shale from the coal mines; that this material was piled from 2 to 3 feet high on either side of the track at the time and place of accident, and the space between the ties was left with holes from eight to ten inches deep; that in properly prepared switch yards the ground would be filled to a level with the ties, and the whole space between tracks and rails surfaced with cinders or burnt clay so as to make an even surface that the switchmen might not be subjected to an unnecessary danger of stumbling. The failure to maintain switching yards in a reasonably level condition, resulting in injury which might otherwise have been avoided, is actionable negligence.

"The law does not require a railroad company to furnish machinery, tracks, and switches for their employes which are of the best character, or that are absolutely safe, but the

duty imposed is to use reasonable and ordinary care and diligence in providing safe machinery, tracks, and switches for the use of those engaged in its service. (*Chicago, Rock Island and Pacific Railroad Co. v. Lonergan,* 118 Ill. 41.) But this rule, as the evidence tends to show, was not observed. The evidence seems to show that, as a general rule, railroad companies, at stations within switching limits, have their tracks filled up to the level of the ties.   So that brakemen may walk over the ties in coupling cars without stumbling or falling.   If this precaution had been observed, it is apparent appellee's foot, in attempting to couple the cars in question, would not have been caught under the ties, and he would not have stepped into the cattle guard and received the injury." *Illinois Cent. R. Co. v. Sanders,* 166 Ill. 270, 46 N. E. 799.

See, also, *Lake Erie & W. R. Co. v. Morrissey,* 177 Ill. 376, 52 N. E. 299; *Donahue v. Boston & M. R. R. Co.,* 178 Mass. 251, 59 N. E. 663; *Missouri, K. & T. R. Co. v. Keefe,* 37 Tex. Civ. App. 588, 84 S. W. 679; *St. Louis, I. M. & S. R. Co. v. Mangan* (Mo.), 112 S. W. 168; *Kennedy v. Lake Superior Terminal & Transfer R. Co.,* 93 Wis. 32, 66 N. W. 1137; *Kansas City, F. S. & G. R. Co. v. Kier,* 41 Kan. 661-671, 21 Pac. 770, 13 Am. St. 311; *Southerland v. Northern Pac. R. Co.,* 43 Fed. 646.   Much of this evidence was disputed by appellant's witnesses, but the question raised by the conflict was, of course, for the jury.

As to the equipment of the car, the evidence was without conflict that there were no ladders either on its sides or ends; that on each side of the end very near to the corner was an iron hand hold extending across the extreme outer end of the opening in which the two switchmen sat, and that at the sides of the car near the end was a stirrup reaching down near the ground and a grab iron about midway of the height of the car.   There was evidence tending to show that the usual equipment of such cars required ladders from bottom to top on both the sides and the ends.   Such an arrangement would enable a man to securely brace himself with both hands and

feet.   Under the evidence, the question of negligent equipment was also for the jury.

The remaining charge of negligence is that the engineer was inexperienced and incompetent, of which fact the appellant was cognizant and the deceased ignorant.   That the engineer's negligence was one of the concurring causes of the accident was fairly established.   The testimony of the switchman who was on the car with the deceased was that the progress of the car was checked with "quite a hard jerk," which threw deceased off and caused the witness to lose his balance and go forward, but that he held on by catching the board on the edge of which the two men sat; that it was not an ordinary service stop but a hard stop; stronger than a service stop, and that after the jerk the cars kept drifting and ran over the deceased before he could regain his feet.   The evidence tended to show that the train was running at about six or seven miles an hour; that it was only necessary to slow down to allow the fireman to throw a switch and get back on the engine; that no sudden jerk was necessary; and that such a jerk would be produced by a too sudden application of the air brakes, especially with a large powerful engine such as the one then in use.   The evidence showed that the engineer had been a fireman for over three years, but had actually run an engine for only 41 days.   There was much evidence that he had at other times handled trains roughly by applying the air suddenly so that when the slack ran out the last car would be violently jerked, as one witness expressed it, making "a whip cracker out of the train."   One witness testified that he had complained of this engineer's recklessness to one of the switch foremen, and another switch foreman testified that he had made a written complaint to the assistant superintendent.   Though these complaints were denied by appellant's witnesses, whether they were made or not were controverted questions of fact.   A careful perusal of the evidence convinces us that the question of the engineer's incompetency and of the appellant's knowledge of that fact

were questions for the jury. There was something more than a merely passive duty upon the appellant in the selection of the engineer. There was a positive duty to take reasonable precaution to ascertain his competency. *Pearson v. Alaska Pacific Steamship Co.*, 51 Wash. 560, 99 Pac. 753, 130 Am. St. 1117; *Seewald v. Harding Lumber Co.*, 49 Wash. 655, 96 Pac. 221; *Emery v. Tacoma*, 71 Wash. 132, 127 Pac. 851. This was especially true in view of his known limited experience as an engineer. *Ostroski v. Blumauer Logging Co.*, 74 Wash. 672, 134 Pac. 521; 1 Labatt, Master & Servant, § 186. We are of the opinion that the evidence was sufficient to take the case to the jury upon every charge of negligence.

Nor can it be held that the deceased assumed, as a matter of law, the risk of dangers unnecessarily injected into his invironment as the cumulative effect of the appellant's negligence in these various particulars. Even if it be conceded that he knew of the obstructions on either side of the track, and knew of the inadequate equipment of the car in respect to ladders and hand holds, the evidence fails to show that he had either knowledge or warning of the inexperience and incompetency of the engineer, nor was the evidence by any means sufficient to establish, as a matter of law, that he had any knowledge or warning of the rough and uneven character of the roadbed at the place where he was killed. The jury would have been justified in finding that, but for the rough and uneven roadbed, he could have regained his footing and saved himself, even after the fall. There was ample room for a reasonable difference of opinion as to whether he knew and appreciated the dangers thrust upon him by the concurrence of these with the other elements of appellant's negligence. In such a case, the question of assumption of risk is always one for the jury. *Pearson v. Federal Min. etc. Co.*, 42 Wash. 90, 84 Pac. 632; *Etheridge v. Gordon Const. Co.*, 62 Wash. 256, 113 Pac. 639; *Jobe v. Spokane Gas & Fuel Co.*, 73 Wash. 1, 131 Pac. 235; *Illinois Cent. R. Co. v.*

*Sanders, supra; Gordon v. Chicago, R. I. & P. R. Co.*, 146 Iowa 588, 123 N. W. 762; *Hamilton v. Chicago, B. & Q. R. Co.*, 145 Iowa 431, 124 N. W. 363.

The affirmative defense of contributory negligence was not established. The deceased was not negligent in sitting where he did. There was no other place for him to sit. He was expected to ride upon the car, but no means were provided for him to climb to its top or to hang upon its side. The latter course would have been suicidal in any event, in view of the piles of lumber on the one hand and the bridge piling on the other in close proximity to the track. It is urged that there was a hand hold within reach, but there is no evidence that he did not have hold of it when he fell. He was a man of over 200 pounds in weight. It is obvious that, when he was thrown from his seat without warning, his weight would almost necessarily break his hold. The man with him was a smaller man and the fact that he with difficulty saved himself from the same fate is no evidence of contributory negligence on the part of the deceased.

There was no question of fellow servant involved. The duty of exercising reasonable care to furnish a competent engineer was upon the appellant. Whether it did so or not was, under the evidence, a question for the jury. If it did not, then, assuming that the engineer was a fellow servant of the deceased, that fact was immaterial. Moreover, had it not been for the rough and uneven condition of the roadbed the deceased might have saved himself even after the fall. The car was merely drifting after the sudden violent jerk, and with a smooth surface the deceased might have regained his footing and escaped from the track. Manifestly, the appellant's negligence in maintaining a rough and uneven roadbed contributed to the tragedy. As shown by the authorities which we have cited, that negligence alone would be sufficient to establish appellant's liability. Even assuming that the engineer was competent, his negligence concurred therewith, and the appellant would still be liable.

"It is uniform authority that, if negligence of the master contributes to the injury, he is liable, even though the negligence of a fellow servant was contributory. *Grand Trunk Ry. Co. v. Cummings*, 106 U. S. 700 (1 Sup. Ct. 493). This principle has been uniformly followed by this court, and was announced in *Ralph v. American Bridge Co.*, *ante*, p. 500, where it is said: 'It is also well settled that if the negligence of a fellow servant concur with the negligence of the master, it does not excuse the primary negligence of the master for injury to another fellow servant.' " ¦ *Howe v. Northern Pac. R. Co.*, 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949.

IV.    It is claimed that the court erred in giving certain instructions, but a careful reading of these instructions in context convinces us that they contained no prejudicial error. The instructions as a whole fairly and correctly stated the law applicable to the evidence.

V.    Finally, the appellant contends that the verdict was excessive, citing the action of this court in *Creamer v. Moran Bros.*, 41 Wash. 636, 84 Pac. 592, in which a verdict for wrongful death was reduced from $13,500 to $8,000. Creamer was, however, at the time of his death, ten years older than the deceased and his earning capacity less. The deceased here was a vigorous man, 38 years old, with a life expectancy of over 29 years. The verdict was for $15,000. In *Walters v. Spokane International R. Co.*, 58 Wash. 293, 108 Pac. 593, 42 L. R. A. (N. S.) 917, a verdict for $20,000 for the death of a man 44 years old and earning less than the deceased here was reduced to $15,000 by this court. In *Walker v. McNeill*, 17 Wash. 582, 50 Pac. 518, a verdict of $40,000 was reduced to $25,000. In view of these decisions, we would not be warranted in reducing the recovery in this case.

The judgment is affirmed.

CROW, C. J., MORRIS, MAIN, and FULLERTON, JJ., concur.